JAMES DUNN ET AL. *v.* LEO D. JENKINS, WARDEN,
INDIANA STATE PRISON ET AL.

[No. 376S89. Filed June 14, 1978.]

*Theodore L. Sendak,* Attorney General, *David A. Arthur,* Deputy General, for appellants.

*Harriette Bailey Conn,* Public Defender of Indiana, *Peter W. Bullard,* former Deputy Public Defender, for appellees.

GIVAN, C.J.—This is a consolidation of two appeals from a judgment in the LaPorte Circuit Court regarding the diminution of sentences under the new good time statute, IC § 11-7-6.1 [Burns Supp. 1977]. Appellants Jimmy Norris, Harold Richardson, Arthur Ramsey, Ronald Baurle and Steve Henry, filed separate petitions for habeas corpus prior to May 15, 1975. On April 15, 1975, a class action petition for habeas corpus was filed and this cause was ordered to proceed as a class action on May 15, 1975. The individual petitions and the class action were consolidated in the trial court, following which the court entered judgment denying in part and granting in part the relief sought. The State and the petitioners appealed the court's decision. Upon petition of the inmates, the cases were transferred to the Supreme Court and consolidated.

At the outset we note that although the petitions in this action were denominated petitions for habeas corpus, they were in fact petitions for post-conviction relief pursuant to Indiana PC. 1 § 1(a) (5) and were treated as such by the trial court. Indiana PC. 1 § 1(a) (5) states that a person convicted of a crime by a court in this State may institute a proceeding under the rule by claiming, "that his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint." This Court has held that no court has jurisdiction to entertain a petition for habeas corpus unless it is alleged that the prisoner is en-

titled to immediate discharge. See *Hendrixson* v. *Lash,* (1972) 258 Ind. 550, 282 N.E.2d 792. Furthermore, a prisoner can only obtain a discharge through habeas corpus relief, not a modification of his commitment. *Hawkins* v. *Jenkins,* (1978) 268 Ind. 137, 374 N.E.2d 496; *Shoemaker* v. *Dowd,* (1953) 232 Ind. 602, 115 N.E.2d 443. The petitioners sought modification of their sentences pursuant to the provisions of the new good time statute. They did not seek a discharge. Therefore, this action must be treated as one for post-conviction relief.

This, however, raises an additional problem since the record fails to indicate whether all members of the class were sentenced to terms of greater than ten years. This is a jurisdictional requirement of this Court. Indiana PC. 1, § 7; AP. 4(A)(7). It must be assumed however that this is not the case, in that the class action is on behalf of all inmates of the state prison. Nevertheless, since this action has already been consolidated in this Court, we will assume jurisdiction and will proceed to decide the merits of the case.

The State alleges four errors on appeal: that the trial court erred, (1) in certifying the petition for habeas corpus filed by inmates on April 15, 1975, as a class action; (2) in ruling that the reclassification of inmates into time-earning class three or four under the new statute, IC § 11-7-6.1 [Burns Supp. 1977], amounted to a violation of the prohibition against *ex post facto* laws; (3) in placing inmates who have been discharged from one sentence to serve a second sentence in time-earning class two; (4) in not ruling as to the proper method of computing diminution of inmates' sentences under the old good time statute. IC § 11-7-6 [Burns 1973].

The petitioners claim the trial court erred:

(1) In holding that the new good time act, IC § 11-7-6.1, does not mandate the respondent either implicitly or explicitly, to credit petitioners of subclass "C" with good time that accumulated prior to February 20, 1974, toward their parole eligibility date, where such petitioners are serving determinate

sentences. Further, in holding that respondents' practice of not so crediting petitioners of subclass "C" is not a denial of the equal protection of the law; and

(2) In holding that the members of subclass "E," inmates who were initially classified into time earning classes three or four, pursuant to IC § 11-7-6.1-3 (c), were not entitled to hearings prior to such classification and that the procedures used for such classification were adequate to protect the subclass members so as not to arbitrarily and capriciously deny them their interest in higher time-earning classifications.

The State argues that a class action was an improper vehicle for adjudicating the petitioners' claims because the facts relative to each of the five subclasses were dissimilar and because the class was not so large as to justify a class action, in that each inmate had access to the court and the ability to bring an action to enforce his particular rights.

Class actions are generally proper where a question exists which is of common or general interest to a large number of individuals, but for reasons of judicial economy and convenience, separate actions by each individual would be impractical. Generally, the party seeking to establish the propriety of a class action has the burden of proof. *Wilson* v. *Kelley*, (1968) 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425. The rules governing class actions in this State are set out in Indiana TR. 23. The circuit court in this case relied upon TR. 23 (c) (4), which is designed to be utilized whenever members of the class have divergent or antagonistic interests. This section provides:

"(4) When appropriate
"(a) an action may be brought or maintained as a class action with respect to particular issues, or
"(b) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

Pursuant to the above section, the circuit court divided the class into five subclasses and treated each subclass as a class

in itself for the purpose of settling the issues raised. These subclasses were: (A) those claiming IC § 11-7-6.1 [Burns Supp. 1977], was applied *ex post facto* when certain inmates were placed in time-earning class three or four for misconduct occurring before the effective date of the new statute; (B) those contending that inmates earning credit in time-earning class one on one sentence were improperly placed into time-earning class two when beginning to serve the second sentence; (C) inmates denied good time towards parole eligibility for that part of the determinate sentence served under the old good time statute; (D) inmates challenging the method of calculating good time credit under IC § 11-7-6 [Burns 1973]; and (E) inmates challenging their placement into time earning class three or four without an administrative hearing. Each subclass presented distinct interests which were sufficiently common to justify the circuit court's finding that each subclass constituted a separate class under TR. 23(c)(4). In addition, we cannot accept the State's argument that judicial economy and convenience and the best interests of the individual inmate would be served by requiring each inmate to bring an individual action to litigate his particular grievance. The petitioners therefore sustained their burden and the circuit court committed no error in certifying this cause as a class action.

A judgment of this Court will therefore be binding upon all inmates incarcerated at the Indiana State Prison who fall within the definition of the established subclass and who have not requested exclusion from that class in accordance with TR. 23(c)(2).

The circuit court ruled that the initial classification of inmates under the new good time act, IC § 11-7-6.1 [Burns Supp. 1977], into time earning class three or four, based solely upon the bad conduct of those inmates which had occurred prior to the enactment of the new statute, was a violation of constitutional proscriptions against *ex post facto* laws. The court applied this ruling only to those inmates

whose rate of good time accumulation was "deleteriously" affected because they were accumulating good time credit at a faster rate under the old good time law, IC § 11-7-6 [Burns 1973], than they were receiving after their classification into classes three or four under the new statute.

The State alleges that the circuit court erred in finding an *ex post facto* violation. It is the State's claim that past conduct of inmates was a proper criteria in classifying the inmates because it was reflective of their performance, rehabilitation, ability and willingness to accept responsibility and to co-operate with prison officials. It is argued that the criteria adopted were reasonable and necessary and therefore related to the objective of the statute, citing *State ex rel. VanNatta* v. *Rising*, (1974) 262 Ind. 33, 310 N.E.2d 873, to support its argument.

In *VanNatta* this Court reversed a lower court finding that the application of the habitual traffic offender statute violated *ex post facto* proscriptions. This statute provided for automatic revocation of one's driver's license upon three convictions of driving while under the influence of alcohol. One of these convictions had to occur subsequent to the statute thereby putting the offender on notice of the consequences of future conduct. The Court found the retroactive character of the new statute constitutional. The Court determined that the appellant was not receiving an increased punishment for prior conduct but was merely falling into a statutory class, which is prohibited from travelling upon the public highways in order to protect other persons using the highways.

The *VanNatta* case does not control in the case at bar. In *VanNatta* we found the statute valid because drivers were put on notice that a subsequent violation would result in an automatic revocation of their license. In the present case, the new good time statute was applied so as to deprive inmates of a greater rate of good time earning which they had enjoyed under the old statute.

Inmates had no opportunity subsequent to the new statute's enactment to modify their conduct so as to qualify for a higher earning classification or prevent being placed in a lesser class. The legislature may prescribe new procedures and increase punishment as long as they do not alter the situation for an individual to his disadvantage so as to deprive him of that to which he was entitled at the time he acted under existing laws. See *Warner* v. *State,* (1976) 265 Ind. 262, 354 N.E.2d 178; *Dowd* v. *Sims,* (1950) 229 Ind. 54, 95 N.E.2d 628. The trial court properly concluded that, unlike the case in *VanNatta,* the classification under the new statute acted *ex post facto* to punish conduct of inmates occurring before the new statute's enactment.

We also affirm the court's finding that there were no *ex post facto* violations as to inmates who were classified into time-earnings class three or four who were not "deleteriously" affected in that there was no decrease in the amount of good time credit earned under the old statute.

The State claims the trial court erred in granting relief to those inmates serving in time-earning class one at the time they were discharged from one commitment and placed into class two upon the commencement of a second sentence. The statute involved is IC § 11-7-6.1-4 [Burns Supp. 1977], which reads as follows:

"11-7-6.1-4. *Classification of new inmate* [Repealed effective October 1, 1977].—Whenever an inmate entitled to a diminution of time from his or her sentence is received into the department of correction, such inmate shall automatically be assigned to class two [2]. Subsequent reclassification shall be made in accordance with the procedure provided in this chapter [11-7-6.1-1—11-7-6.1-8]."

The petitioners argue that to reduce inmates in time earning status from class one to class two, despite their good conduct and achievement records, contravenes the statute in that the inmate affected was having his time earnings status reviewed without any statutory authority and that the inmate was

being demoted in time earning status without a conduct report or other procedural protections afforded by the statute. They argue that the purpose of the legislature in enacting such statutes was to encourage inmates of penal institutions to behave well while confined, improve their morale and thus help the prison authorities to maintain order and control. There can be no doubt that this was the legislative intent in enacting the statute. The petitioners place great weight on the wording of the statute, wherein it is stated, "Whenever an inmate . . . is received into the department of correction . . ." as excluding inmates who are already in the institution serving a sentence, then are discharged from that sentence and required to take up a new sentence. The State does not take issue with the purpose of the good time statute but does maintain that it should be read to mean that any inmate who is commencing a new sentence is to be started in time-earning class two. The fact that such an inmate may have been incarcerated in the institution under a prior commitment immediately before starting his new sentence, does not alter the operation of the statute. The State points out that such an inmate starting his new sentence is on an equal par with any inmate coming in from the outside to start a like sentence in the institution. Even though he has been an inmate for some years in the institution, when the time comes for his discharge under his first commitment, he is in fact so discharged. Upon taking up the new commitment he is given a new prison number and is started again in the system as a new inmate under a new commitment. We do not agree with the interpretation of the trial court that such treatment violates the spirit of the statute. In fact, it appears to us that such treatment is much more fair and results in equal treatment of all inmates in like situation. We do not perceive this to be a "demotion" from his prior standing earned under his other commitment. That commitment has terminated and all standings acquired thereunder are also terminated. In taking up his new commitment he is a new prisoner with no standing in the institution other

than that afforded under the statute to all inmates commencing a new commitment. We therefore hold that in this respect the trial court erred and that his judgment should be reversed.

The State next claims the trial court erred in holding the question moot as to the application of the earning schedule established in the old good time statute, IC § 11-7-6-1 [Burns 1973], to those inmates who served part of their sentence prior to the passage of the new good time statute. The trial court's ruling that the question was moot was based upon the executive directive numbered 86 of the Department of Correction, which adopted such a policy. The State argues however that such a directive was issued following a letter from the trial judge, Alban Smith, indicating to the department that he would make rulings in the future on that basis and that the department was merely capitulating to Judge Smith's request. However the record in this case indicates that the director of the Department of Correction testified in the trial proceedings that he had questioned the propriety of the original method of calculation and that he had decided the new method adopted by executive directive numbered 86, was proper, fair and logical in light of the circumstances. If the State in fact wished to make an issue of this proposition they could easily have done so. Under the circumstances we find the trial court was correct in its ruling that the issue was moot.

The petitioners have raised two alleged errors in this appeal. First they alleged that they were denied equal protection of the law, pursuant to Amendment XIV of the Constitution of the United States and Article 1, § 23 of the Indiana Constitution, in that the State failed to credit those inmates serving determinate terms with good time earned under the old good time statute and applying said time toward their parole eligibility date. IC § 11-1-1-9.1 [Burns Supp. 1977] has abolished the old system of granting good time credit which existed under IC § 11-7-6 [Burns 1973] and IC § 11-7-

7-1 [Burns 1973]. Those statutes provided that inmates serving indeterminate terms were eligible to earn good time towards both their discharge and parole eligibility dates. Inmates serving determinate terms however were not eligible for parole and were credited with good time only towards their discharge date. The good time statute, IC § 11-1-1-9.1, provides:

"11-1-1-9.1. *Eligibility of felons for parole [Effective October 1, 1977].*—(a) Every prisoner sentenced upon conviction of a felony to an indeterminate term of imprisonment in a correctional institution shall be eligible for release on parole upon completion of his minimum term. Every prisoner sentenced upon conviction of a felony to a determinate term of imprisonment in a correctional institution shall be eligible for release on parole upon completion of one half [½] of his determinate term or at the expiration of twenty [20] years, whichever comes first. This subsection does not apply to a person who is sentenced under IC 35-50 [35-50-1-1—35-50-6-6].

"(b) Notwithstanding any other provision of this chapter, a person imprisoned for a felony under IC 35-50 [35-50-1-1—35-50-6-6] shall be released on parole in accord with IC 35-50 [35-50-1-1—35-50-6-6]."

IC § 11-7-6.1-2 [Burns Supp. 1977] reads in part as follows:

"11-7-6.1-2. *Classification of inmates—Schedule of good time earned [Repealed effective October 1, 1977].*—Every inmate who is now or hereafter may be confined, upon conviction of a felony, in a correctional institution under the supervision of the Indiana department of correction, except those inmates under sentence of death or life imprisonment, shall at all times during such confinement be assigned to one [1] of the following four [4] time earning classes and shall be entitled to a diminution of time from his or her sentence as indicated in the following table for the respective months of his or her sentence as indicated in the following table for the respective months of his or her sentence, prorated for any part of a month, including time being served for unpaid fines or costs. Class assignments shall be made in accordance with the procedure provided in this chapter [11-7-6.1-1—11-7-6.1-8]. This good time shall apply both toward an inmate's discharge date and his parole eligibility date.

| "TIME EARNING "CLASSES OF GOOD "TIME | "RATE OF GOOD "TIME DIMINUTION FROM EACH INDIVIDUAL MONTH OF SENTENCE WHILE IN CONFINEMENT |
|---|---|
| "Class one [1] | Thirty [30] days |
| "Class two [2] | Twenty [20] days |
| "Class three [3] | Ten [10] days |
| "Class four [4] | Zero [0] days" |

In interpreting these two sections of the statute the Department of Correction has determined that one-half of the determinate term, minus good time earned under the new schedule, is the formula now to be used for inmates serving determinate sentences. The petitioners ask this Court to reject this definition and to credit inmates serving determinate terms, begun prior to the effective date of the new statute, with all good time earned under the new law and to apply the old statute formula to their sentences. They argue that the failure to adopt this method of crediting good time is a violation of the equal protection of both the federal and state constitutions. In support of their position, the petitioners cite *Brown* v. *State,* (1975) 262 Ind. 629, 322 N.E.2d 708. In *Brown* this Court sustained an equal protection challenge to a statute which provided that persons convicted of a crime, when sentenced, should be given credit towards service of his sentence for any days spent in confinement as a result of the criminal charge for which the sentence was imposed or as a result of the conduct on which such charge is based. In the *Brown* case the Court held that persons serving time prior to the enactment of the statute were entitled to credit for time spent in jail awaiting trial, as well as those persons who received their sentences after the passage of the statute. In that statute the legislature had been entirely silent as to any retroactive effect of the statute and had merely made a general statement of public policy in giving credit for jail time awaiting trial.

In the case at bar we have an entirely different situation. Initially good time was only awarded to inmates serving de-

terminate terms. This time was credited solely towards their discharge date. The legislature then extended the right to good time credit to inmates serving indeterminate terms. These inmates were entitled to be credited with good time toward both their parole eligibility and discharge dates. Inmates serving determinate sentences were not entitled to parole. See IC § 11-7-6 [Burns 1973] and § 11-7-7-1 [Burns 1973]. Under the new good time act inmates serving determinate sentences are, for the first time, eligible for parole. IC § 11-1-1-9.1, *supra*. The Department of Correction has defined this clause to mean one-half of the determinate term, minus good time earned under the new schedule. Authority for this formula is found in IC § 11-7-6.1-2, *supra*.

Persons sentenced to determinate sentences and those sentenced to indeterminate sentences are in two separate and distinct classes. The legislature has always treated them so and provided entirely different formulas for the computation of time to be served by each group. The new statute for the first time sets up a formula whereby persons serving determinate sentences may be placed on parole. There is no reason to consider the question of whether the application of the new formula should relate back to the time prior to the passage of the statute, as was the case in *Brown*. The policy under the old statute was clear and unambiguous and was easily administered for many years. By like token, the policy under the new statute is clear and unambiguous and has been correctly interpreted by the Department of Correction and by the trial court. The mere fact that there has been a change in the method of computing time does not *ipso facto* require retroactive effect under our constitution. There is a legitimate State objective in creating a good time credit scheme in order to improve the morale and well being of inmates by lessening their period of incarceration. This also improves prison discipline by rewarding good behavior. Petitioners argue that to deny credit retroactively to persons serving indeterminate sentences would have the

effect of defeating the legislative objective in passing a good time statute and would be detrimental to inmate morale. The fact, however, is, as discussed above, that the legislature has given careful attention to fair treatment of each of the two separate and distinct classes of inmates serving determinate sentences and inmates serving indeterminate sentences. Rather than depriving the inmates of benefits, the new good time act enlarges upon the benefits to which an inmate in either class is entitled. From a complete reading of the new statute, it is clear that the General Assembly had intended to vest the Department of Correction with the duty and discretion to implement the statute in an efficient and sound fashion. As correctly found by the trial court, the department's interpretation of the statute and the implementation thereof is entirely correct in this regard.

Petitioners next claim the trial court erred in holding that the members of subclass "E" who were initially classified into time-earning class three or four, pursuant to IC § 11-7-6.1-3 (c), were not entitled to hearings prior to such classification and that the procedures used for such classification were adequate to protect the subclass members so as not to arbitrarily or capriciously deny them their interest in a higher time-earning classification.

At the outset it should be noted that the inmates falling within subclass "E" are entirely different than those falling in subclass "A" and were treated accordingly by the trial court. Subclass "A" consisted of inmates who had been classified into time-earning class 3 or 4 for conduct occurring prior to February 19, 1974, and whose rate of good time accumulation had been "deleteriously" affected by that classification. The trial court was correct in holding that the members of subclass "A" were unconstitutionally classified in light of the *ex post facto* prohibition of the constitution. Subclass "E" however included only those inmates whose rate of good time accumulation had not been impaired by classification into earning class 3 or 4. These inmates had previously been found

to have committed acts of misconduct which, pursuant to department directive, precluded a right to a higher time-earning status. Their classification into class 3 or 4 was therefore merely a transfer of a previously determined status to the new system.

An inmate has no constitutional right to receive good time credit. This right is created by statute and the legislature is given wide latitude in designing and implementing a good time scheme. *Wolff* v. *McDonnell*, (1974) 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935. *Cf.* *Meachum* v. *Fano*, (1976) 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451; *Montayne* v. *Haymes*, (1976) 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466. When rights of this nature are affected so that an individual is likely to suffer a "grievous loss," then due process mandates that minimum procedural safeguards be insured. *Wolff* v. *McDonnell, supra; Goldberg* v. *Kelly*, (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. *Cf. Morrissey* v. *Brewer*, (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; *Gagnon* v. *Scarpelli*, (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. Such a requirement is necessary in order to prevent arbitrary and capricious action by the State. *Wolff* v. *McDonnell, supra.*

In the case at bar the trial court correctly ruled that due process protection is required only when an inmate is being demoted to a lower time-earning class or being deprived of accumulated good time. Members of subclass "E" had previously been determined to have committed those acts which, under the new system, required their placement into earning class 3 or 4. They were not therefore demoted in their ability to earn good time credit and suffered no "grievous loss' which would require a hearing.

The trial court ruled that although members of subclass "E" had no right to a hearing prior to their classification into class 3 or 4, they nevertheless had a substantial interest in being initially classified into earning class 2 which could not be arbitrarily or capriciously denied. It held that the inmates

were not denied due process because the classification committee reviewed each inmate's packet and based its determination of that inmate's new classification solely on his established institutional record. We find no error in this holding and affirm the trial court's order.

In their brief, petitioners pose a number of questions to this Court concerning the implementation of the statute, which questions were not raised at the trial court level. They are therefore not appropriate for review at this time. AP. 8.3 (A) (7) ; *Ruggirello* v. *State,* (1969) 252 Ind. 144, 246 N.E.2d 481. We hold the trial court did not err in holding that the members of subclass "E" inmates were not deprived of due process by reason of their classification under the new statute.

This case is remanded to the trial court with instructions to modify its judgment concerning those inmates who were discharged from one commitment and placed into class 2 upon the commencement of a second sentence, as hereinabove indicated.

The trial court is in all other matters affirmed.

DeBruler, Hunter, Pivarnik and Prentice, JJ., concur.

NOTE.—Reported at 377 N.E.2d 868.