**Kyle W. CAMPBELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A05–9806–CR–310.

Court of Appeals of Indiana.

June 30, 1999.

John T. Wilson, Anderson, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Kyle W. Campbell ("Campbell") pled guilty to three counts of forgery as Class C felonies and one count of theft as a Class D felony, pursuant to a plea agreement. The trial court ordered Camp-

bell to serve two years in the Madison County Work Release Center ("Work Release Center").[1] Because Campbell violated the terms of his work release, the trial court terminated his placement and ordered him to serve the balance of his two-year sentence in the Department of Correction ("DOC"). He now appeals the trial court's denial of his request for credit time for the period he participated in the program before his violation.[2]

## Issue

A single issue is dispositive of our review: namely, whether the trial court exceeded its statutory authority by denying Campbell's request for credit time for time served in the work release program before his violation.

## Facts and Procedural History

The facts most favorable to the judgment indicate that on March 22, 1995, Campbell cashed a check at Star Financial Bank ("Bank") for $100.00 payable to himself against the account of Derryke Pierce ("Pierce"). On March 23 and 27, 1995, Campbell again presented checks at the Bank payable to Brian Small for $300.00 and $350.00 respectively against Pierce's account. On April 3, 1995, after the three checks were returned, Pierce signed an affidavit of forgery for those checks. On April 4, 1995, an official from the Bank contacted the Elwood Police Department ("EPD") to report the forgeries and the theft of Pierce's checks. Lieutenant Jack Miller ("Lt.Miller") was the investigating officer.

On April 6, 1995, Pierce informed Lt. Miller that he had confronted Campbell, who is the son of his current girlfriend, about the stolen checks. Campbell had admitted to Pierce that he had stolen only the check cashed in Campbell's name for $100.00. On April 14, 1995, Campbell came to the EPD to speak to Lt. Miller about the stolen checks. Campbell was advised of his rights, signed a waiver of his rights, and agreed ·to answer questions. When asked about the stolen checks, Campbell admitted that he had taken a total of six checks from Pierce's checkbook. Although Campbell had disposed of three checks, he admitted that he had cashed the remaining three checks, totaling $750.00. Campbell also admitted that he had written all three checks and had made up the name Brian Small.

On September 14, 1995, Campbell was charged with three counts of forgery as Class C felonies and one count of theft as a Class D felony. On October 23, 1995, an initial hearing was held where the trial court entered a preliminary plea of not guilty on Campbell's behalf. On February 10, 1997, Campbell pled guilty to all four counts pursuant to a plea agreement; however, the plea agreement was silent as to the sentences to be imposed by the trial court for the guilty pleas. On March 10, 1997, Campbell was sentenced to eight years imprisonment for each forgery count and 18 months for the theft count; the sentences were to be served concurrently. The trial court suspended six years of his sentence and ordered him to serve two years at the Work Release Center pursuant to IND. CODE § 35–38–2.6–3.[3]

1. The Madison County Work Release Center is a community corrections program authorized under IND. CODE § 35–38–2.6–1 *et seq.* The program consists of "residential and work release, electronic monitoring, day treatment, or day reporting[.]" IND. CODE § 35–38–2.6–2.

2. In their appellate briefs, both Campbell and the State use the term "good time credit." "Good time credit," "earned credit time," and "credit time" are terms used interchangeably when referring to the statutory reward a prisoner receives when he follows the rules of a penal facility. *See* IND. CODE § 35–50–6–3 (a person assigned to Class I earns one day of credit time for each day of imprisonment; a person assigned to Class II earns one day of credit for every two days of imprisonment); *see also Purcell v. State,* 700 N.E.2d 815, 816 (Ind.Ct.App.1998), ("credit

time is commonly referred to as good time credit"). In fact, the General Assembly amended IND. CODE § 35–50–6–3, in 1977, by substituting the phrase "credit time" for "good time." For purposes of clarification, we will refer to Campbell's request for "good time credit" as "credit time."

3. IND. CODE § 35–38–2.6–3 provides in pertinent part:

(a) The court may, at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to commitment to the department of correction. The court may impose reasonable terms on the placement.
(b) Placement in a community correction program under this chapter is subject to the avail-

The trial court further ordered that Campbell be placed on probation for a period of two years upon his release from incarceration.[4]

On February 11, 1998, Campbell was warned by a staff member that if he continued to return to the Work Release Center in an untimely manner, he would be reported for violating work release rules. On February 13, 1998, Campbell checked out of the Work Release Center around 2:15 p.m. to report to work. About two hours later, Campbell's employer telephoned Allen Clark ("Clark"), a correctional officer at the Work Release Center, to inform him that Campbell never showed up for work and that he was fired. An arrest warrant was then issued for Campbell for contempt of court, failure to return to the Work Release Center, failure to pay fees, and failure to keep employment. Campbell eventually went to his place of employment and caused a disturbance with a guard at the facility. Campbell then returned to the Work Release Center around 6:00 p.m.

On February 23, 1998, David M. Surrant, director of Work Release for Community Justice, filed a notice with the Madison Superior Court that Campbell had violated work release rules. During the evidentiary hearing on March 2, 1998, Campbell admitted that he had violated the conditions of his work release. As a result, the trial court terminated his placement and sentenced him to the DOC for "the balance of the two-year executed portion of his sentence."[5] Campbell requested credit time for the period he was at the Work Release Center prior to his violation of the placement terms; however, the trial court denied him any credit time because he had violated the rules of the work release program.

### Discussion and Decision

Campbell maintains that the trial court exceeded its statutory authority by denying him credit time for the period of his work release placement. Specifically, Campbell alleges that IND. CODE § 35–38–2.6–5 limits "what the [c]ourt may do when a person violates his placement in a community corrections program." Because "denial of [credit time] is not mentioned as an option," Campbell argues the trial court was therefore precluded from denying him credit time.

When interpreting the meaning of a statute, this Court is guided by well-established rules of statutory construction. A

---

ability of residential beds or home detention units in a community corrections program.

4. Because the Work Release Center is a community-based program and serves as an "alternative to commitment to the department of correction," placement in the program is *not* a commitment to the department of correction. *Million v. State,* 646 N.E.2d 998, 1000 (Ind.Ct.App.1995) citing IND. CODE § 35–38–2.6–3(a) (emphasis supplied). The Work Release Center falls within the definition of a penal facility as "any other facility for the confinement of persons under sentence, or awaiting trial or sentence, for offenses." IND. CODE § 35–41–1–21. Even though security measures in the Work Release Center are substantially relaxed in comparison to other correctional institutions, residents only have the freedom of movement and work opportunities authorized by the supervisory officials. *See Sureeporn v. State,* 473 N.E.2d 161, 163 (Ind.Ct. App.1985); *Montes v. State,* 263 Ind. 390, 395, 332 N.E.2d 786, 790 (1975).

5. In reading the transcript of the sentencing hearing, it is unclear whether Campbell was given credit for the time he had actually served at the Work Release Center before his violation of the rules. At the hearing, the trial court stated that "[Campbell] is ordered incarcerated in the Department of Correction for the two (2) years that was ordered executed at the sentencing [hearing] [o]n March 10, of 1997[.]" However, the trial court's sentencing order provides that Campbell is to serve "the *balance* of the 2–year executed portion of his sentence," which this Court interprets to mean that Campbell was properly given credit for time served in the program *before* his violation (emphasis supplied).

In *Purcell v. State,* 700 N.E.2d 815 (Ind.Ct.App. 1998), the defendant was directly committed to a community corrections program for three years. When he violated the rules of the program, the trial court revoked his placement, after a hearing, and ordered him to serve his entire original sentence, denying him credit for the time he had served prior to the violation. This Court concluded that "[t]he relevant provision of the community corrections statute [IND. CODE § 35–38–2.6–5(3)] provides that upon violation of the placement terms, the placement should be revoked and the *remainder* of the sentence should be ordered served." *Id.* at 817 (emphasis in the original). We therefore held that the defendant was entitled to credit for the time he had already served in the community corrections program before his violation.

statute should be construed to ascertain and give effect to the expressed intention of the legislature by giving the words and phrases their common and ordinary meaning. *Rush v. Elkhart County Plan Comm'n*, 698 N.E.2d 1211, 1215 (Ind.Ct.App.1998), *trans. denied.* Where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and the rules of statutory construction. *Chavis v. Patton*, 683 N.E.2d 253, 257 (Ind.Ct.App. 1997).

■■■ "When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act." *State v. CSX Transportation, Inc.*, 673 N.E.2d 517, 519 (Ind.Ct.App. 1996). There is a presumption that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* It is only when the language of a statute is ambiguous and unclear that we will engage in statutory construction to determine the intent of the legislature to give effect and validity to each provision thereof. *Id.* A statute is considered ambiguous if it is susceptible to more than one reasonable and intelligible interpretation. *Id.* Because the applicable statutes are clear and unambiguous, we do not need to look beyond the statutes for the legislative intent.

Under IND. CODE § 35–38–2.6–5, when a defendant violates the terms of his placement, "the court may, after a hearing, . . . (1) change the terms of the placement; (2) continue the placement; or (3) revoke the placement and commit the person to the department of correction for the remainder of the person's sentence." Campbell is correct that IND. CODE § 35–38–2.6–5 dictates what actions the trial court may take when a person

violates the terms of his placement in a community corrections program. Because there is no express language in IND. CODE § 35–38–2.6–5 concerning the trial court's authority to deprive Campbell of credit time, we must examine the entire operative statutory scheme governing community corrections programs. *See CSX Transportation, Inc.*, 673 N.E.2d at 519.

■■■ Under IND. CODE § 35–38–2.6–6(a), "[a] person who is placed in a community corrections program is entitled to earn credit time under IND. CODE § 35–50–6[.]" [6] The purpose of credit time is "to encourage inmates of penal institutions to behave well while confined, to improve morale, and thus to help the prison authorities to maintain order and control." *State v. Eckhardt*, 687 N.E.2d 374, 376 (Ind.Ct.App. 1997); *see Dunn v. Jenkins*, 268 Ind. 478, 485, 377 N.E.2d 868, 873 (1978). Although not defined in IND. CODE § 35–38–2.6–6 and IND. CODE § 35–50–6–3, our supreme court has defined credit time as "a statutory reward for a lack of conduct that is in violation of institutional rules. It is earned toward release on parole for felons, and does not diminish the fixed term or affect the date on which a felony offender will be discharged." *Boyd v. Broglin*, 519 N.E.2d 541, 542 (Ind.1988). Because credit time is based upon the behavior of a prisoner, receipt of credit time is conditional upon continued good behavior and may be revoked. *State v. Mullins*, 647 N.E.2d 676, 678 (Ind.Ct.App. 1995); *see* IND. CODE § 35–50–6–5. Although Campbell is entitled to credit time, he "may be deprived of earned credit time as provided under *rules adopted by the department of correction* under IND. CODE § 4–22–2." [7] IND. CODE § 35–38–2.6–6(b) (emphasis supplied). We interpret this to mean that credit time should be initially determined by the DOC, not the trial court.[8]

---

6. IND. CODE §§ 35–50–6–3 through 35–50–6–7 provide for the allocation and deprivation of credit time.

7. The administrative rules and procedures contained in IND. CODE §§ 4–22–1–1 to 4–22–1–30 were repealed by 1986 Ind. Acts 18 § 2 and were superseded by provisions contained in IND. CODE § 4–22.5–1 *et seq.*

8. Federal courts have interpreted Indiana law to hold that judicial intervention may be appropriate, on occasion, to resolve issues regarding credit time after all available administrative remedies have been exhausted. *See Sweeney v. Parke*, 113 F.3d 716 (7th Cir.1997); *Smith v. Stoner*, 594 F.Supp. 1091 (N.D.Ind.1984).

 Moreover, when we review the statutory scheme governing the DOC in conjunction with the credit time statute, there is additional evidence to support our conclusion that the denial of credit time is an administrative function. When one statute deals with a subject in general terms and another statute deals with the same subject in a more detailed and specific manner, the two statutes should be construed together to produce a harmonious statutory scheme. *Sanders v. State*, 466 N.E.2d 424, 428 (Ind.1984). If the two statutes present an irreconcilable conflict, then the more detailed statute will prevail over the less detailed statute pertaining to the same subject matter. *Id.*

Under IND. CODE § 11–11–5–2,

The department [of correction] shall adopt rules for the maintenance of order and discipline among committed persons. These rules must describe the conduct for which disciplinary action may be imposed, the type of disciplinary action that may be taken, and the disciplinary procedure to be followed. These rules shall be made available to all committed persons. The disciplinary action imposed must be proportionate to the seriousness of the violation. *For purposes of IC § 4–22–2, the term "rule" as used in this section relates solely to internal policy and procedure not having the force of law.* (Emphasis supplied.)

IND. CODE § 11–11–5–3 expressly permits the DOC to deprive a prisoner of earned credit time under IND. CODE § 35–50–6–5(a) as a disciplinary action for violating the rules of the DOC or a penal facility. However, IND. CODE § 35–50–6–5(b) provides that

[b]efore a person may be deprived of earned credit time, the person must be granted a hearing to determine his guilt or innocence and, if found guilty, whether deprivation of earned credit time is appropriate disciplinary action for the violation. In connection with the hearing, the person is entitled to the procedural safeguards listed in section 4(c) of this chapter [IND. CODE § 35–50–6–4(c) ].[9] The person may waive his right to the hearing.

According to IND. CODE § 35–50–6–5(b), Campbell was entitled not only to a hearing to ascertain if deprivation of credit time was an appropriate disciplinary action, but also to procedural due process protections. A review of the procedural safeguards under IND. CODE § 35–50–6–4(c) reveals that the legislature intended the DOC to conduct the hearing. For example, the DOC has adopted rules concerning who can be an advocate for the person, has authority to determine the safety of witnesses being called to testify; and can expunge a person's prison record of any reference to the charges if the person is found not guilty of the charges. In addition, IND. CODE § 35–50–6–5.5 permits an administrative review by the commissioner of DOC or the sheriff when a person has been deprived of earned credit time.

 In conclusion, an examination of the statutory scheme reveals that the legislature did not intend to invest the trial court with the responsibility of denying or restoring credit time. When IND. CODE § 35–38–2.6 is read in conjunction with IND. CODE § 11–11–5 and IND. CODE § 35–50–6, it is evident that the deprivation or resto-

9. Under IND. CODE § 35–50–6–4(c), the person is entitled to:

(1) have not less than twenty-four (24) hours advance written notice of the date, time, and place of the hearing, and of the alleged misconduct and the rule the misconduct is alleged to have violated;
(2) have a reasonable time to prepare for the hearing;
(3) have an impartial decision maker;
(4) appear and speak on his own behalf;
(5) call witnesses and present evidence;
(6) confront and cross-examine each witness, unless the hearing authority finds that to do so would subject the witness to a substantial risk of harm;

(7) have assistance of a lay advocate (the department [of correction] may require that the advocate be an employee of, or a fellow prisoner in, the same facility or program);
(8) have a written statement of the findings of fact, the evidence relied upon, and the reasons for the actions taken;
(9) have immunity if his testimony or any evidence derived from his testimony is used in any criminal proceedings; and
(10) have his record expunged of any reference to the charge if he is found not guilty or if a finding of guilt is later overturned.
Any finding of guilt must be supported by a preponderance of the evidence presented at the hearing.

ration of a person's credit time is a discretionary matter entrusted not to the courts but to the administrators of the DOC.[10] *See Olejniczak v. Town of Kouts*, 651 N.E.2d 1197, 1199 (Ind.Ct.App.1995), *trans. denied* (statutory provisions relating to the same general subject matter are *in pari materia* and should be construed together to produce a harmonious statutory scheme). Because the stated purpose of the credit time statutes is to promote prison discipline and rehabilitation of inmates, matters relating to the deprivation and/or restoration of credit time should be entrusted to the Department of Correction. Therefore, we hold that granting or denying credit time is an administrative responsibility of the DOC. Because IND. CODE § 35–38–2.6–6 does not give the trial court authority to entertain Campbell's request for credit time, and because the computation of credit time is exclusively an administrative responsibility, the trial court exceeded its statutory authority in depriving Campbell of his credit time.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part with instructions to vacate its order regarding the revocation of Campbell's credit time in accordance with this opinion.[11]

STATON, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting

I respectfully dissent. I do not interpret IND.CODE § 35–38–2.6–6(b) to mean that credit time of a person placed in a community corrections program should be determined by the DOC. The Department of Correction has not adopted any rules pertaining to deprivation of credit time earned while in a community corrections program, *Cf.* 210 I.A.C. § 3–1–17(c)(9) and (e) (establishing procedures for imposition of disciplinary action on *county jail* inmates).

Because the community corrections programs have been established as an alternative to the department of correction, it is necessary that the people monitoring the behavior of the prisoner while in the community have the authority to deny credit time for rule violations. The range of available options for community corrections gives the judge credible forms of nonprison sanctions. Work release is one of those options which emphasizes control of the offender outside the prison setting. Therefore, the sanctions for failing to perform those conditions that allow the offender to be outside the prison setting must be administered by judges locally. It would be within the inherent power of a judge to sanction an offender for violation of a court order.

Despite increased legislative restriction of judicial sentencing discretion, it is judges who remain primarily responsible for establishing sentencing policies. The judiciary is usually directly responsible for the sentencing choice and is held *accountable* for the consequences of that decision to the public. Judges have an interest in ensuring that the intermediate sentencing options available are designed, implemented and operated in a cost-effective and meaningful manner to accomplish their sentencing objectives. Furthermore, such programs will not be successful unless they enjoy the respect and support

---

10. In examining the amendments to IND. CODE § 35–50–6 enacted after 1977, it is clear that the legislature intended the DOC to determine credit time for inmates. Under the previous statutory scheme for credit time, the sentencing judge had the authority only to make recommendations with respect to credit time, while various correctional officials were assigned the duty of evaluating prison behavior and depriving or restoring credit time. *See Jacobs v. State*, 640 N.E.2d 61, 64 (Ind.Ct.App.1994), *trans. denied* ("[i]n making our determination, we must give effect to the plain and ordinary meaning of the language used and may also consider the statute's legislative history, including legislation passed either before or after the statute's enactment"). Under the 1979 amendments, before a person could be deprived of credit time, he had to be granted a hearing before a committee appointed by the commissioner of correction or his designee, and that committee then had to determine if the deprivation of credit time was an appropriate disciplinary action.

11. Because Campbell did not appeal the trial court's finding that he violated the rules of his work release, we need not address that issue and summarily affirm the court's judgment in that respect.

of law enforcement, the prosecution and the defense bar.

Intermediate sanctions must stand or fall on their merits as a satisfactory response to inappropriate behaviors and must convince the community that it is a good public policy. A greater array of community-based sanctions must be offered both to challenge offenders to learn to cope with the community environment and to recognize that any system of social sanctions must have a range of graduated responses to the severity of the offender's behavior and to prior criminal history.

The purpose in enacting the "good time" credit statute was to encourage inmates to behave well while confined and to help prison authorities maintain order and control. *State v. Eckhardt*, 687 N.E.2d 374, 376 (Ind. Ct.App.1997). The same purpose is a necessary component to any alternative intermediate sanction that is community based.

I would affirm the trial court's denial of his request for credit time for violating the terms of his work release.