Michael K. ARTHUR, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 28A01–1008–CR–489.

Court of Appeals of Indiana.

June 8, 2011.

Transfer Denied Sept. 9, 2011.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Michael K. Arthur appeals the provision of the trial court's order that denied him eligibility for credit time while placed on home detention in a community corrections program. The State cross-appeals the trial court's modification of Arthur's sentence.

We reverse as to the former, and we affirm as to the latter.

### ISSUES

Arthur: Whether the trial court abused its discretion and misinterpreted Indiana Code section 35–38–2.6–1 and 35–38–2.6–6 to hold that Arthur was not eligible for credit time [1] while on home detention through a community corrections program.

State: Whether the trial court erred in modifying Arthur's sentence.

### FACTS

On January 25, 2010, the State and Arthur filed with the trial court their signed "Negotiated Plea Agreement" in two cases—28D01–0911–FD–570 ("570"), and 28D01–0908–CM–399 ("# 399"). The agreement provided that in # 570, Arthur would plead guilty to a class D felony; and in # 399, Arthur would plead guilty to a class D felony. The agreement further provided that in # 570, the State would recommend that Arthur be sentenced to 1½ years, with 180 days suspended, "to be served on work release if eligible"; and that on # 399, the State would recommend that Arthur be sentenced to 1½ years, also "to be served on work release if eligible." (App.41, 100).

The trial court took the tendered plea agreement under advisement, and on that same day, January 25, 2010, it ordered both a pre-sentence investigation report *and* an evaluation "to determine whether [Arthur] is eligible and a good candidate for alternative sentencing programs." *Id.* at 43, 102. The evaluation, filed with the trial court on February 25, 2010, reviewed information about Arthur, noted the two specific class D felony offenses to which Arthur was "expected to plead guilty," and found him "an acceptable candidate for work release" with the county community corrections program. *Id.* at 165.

On February 26, 2010, the trial court "accept[ed] the plea of guilty and accept[ed] the terms of the Negotiated Plea Agreement" as to both # 570 and # 399, and it entered judgments of conviction

---

1. We note that the parties use the term "good time credit" in their briefs, but the Indiana Code uses "credit time" to refer to the statutory reward an offender receives when he follows the rules of a penal facility, community transition program, or community corrections program. *See* Ind.Code § 35–50–6–3 ("A person assigned to class I earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting sentencing"); *see also Purcell v. State,* 721 N.E.2d 220, 223 (Ind.1999) (agreeing with the Indiana Court of Appeals that the statutory phrase "credit time" means good time credit). In fact, it was in 1977 that the General Assembly had substituted the phrase "credit time" for "good time" in Indiana Code section 35–50–6–3. *Campbell v. State,* 714 N.E.2d 678, 680 n. 2 (Ind.Ct.App.1999). Consistent with the statute, we refer to Arthur's argument as one asserting his entitlement to "[credit time.]"

thereon. *Id.* at 104, 45. On #570, the trial court imposed a 1½ year sentence, and ordered Arthur "committed to the Greene County Community Corrections Work Release Center for a term of one and one-half years." *Id.* at 105. On #399, the trial court imposed a 1½ year sentence, suspended 90 days, and ordered him committed to the community work release center "for a term of 1 year," to be served "upon completion of" the sentence imposed in #570. *Id.* at 47, 48.

On June 16, 2010, Arthur filed a petition for modification of his place of commitment. He asserted that as a union millwright, he was facing difficulty in job placement because the union's dispatch system for jobs was incompatible with rules at the work release center, and that the rules also precluded his participation in work-related education programs. Arthur sought modification of his place of "commitment to serve the balance of his sentence on home detention." *Id.* at 54. According to his petition, the deputy prosecuting attorney had advised that although he did "not join in" the request for change of placement he would "not oppose the Court's exercising discretion to grant the request." *Id.*

On July 1, 2010, the trial court held a hearing on the petition for modification. Greg Roudebush of the county community corrections program testified that he was Arthur's case manager, and that there had been "no trouble" whatsoever with Arthur since his placement at the work release center on February 27, 2010, and Arthur had complied with all its rules. (Tr. 5). Roudebush testified that the only "reason why under [the] rules [Arthur] would not be eligible to do … home detention rather than work release" would be if "residence" conditions could not be met. *Id.* Arthur testified that he had lost and was continuing to lose union millwright employment

placements due to his inability to respond immediately to dispatch calls because use of his cell phone was not allowed at the work release center. He also testified that the work release center commitment precluded his participation in the union's employment enhancement courses. The State expressly noted for the record that it had "agreed not to oppose the Petition." *Id.* at 19. At the conclusion of the hearing, the trial court stated that it would "order that Community Corrections do an evaluation to determine if Mr. Arthur is eligible," and would take the matter under advisement. *Id.* at 21.

On July 14, 2010, Roudebush filed a report advising that "Arthur is an acceptable candidate for the GPS home detention program." (App. at 167).

On July 30, 2010, the trial court entered its orders for "modification of commitment from community corrections work release to community corrections home detention" in #570 and in #399. (App.8, 115). Therein, the trial court ordered that Arthur "serve the remainder of this sentence" on GPS-monitored home detention, but that he "not receive [Credit Time] for his sentence served on home detention." *Id.* The trial court reasoned that the new amendment of Indiana Code section 35–38–2.6–6 only allowed "[Credit Time] effective July 1, 2010 for persons receiving a direct placement"; however, but because Arthur's sentence was "not a direct placement," therefore, he was "not eligible to receive good time credit." *Id.*

### DECISION

1. *Arthur's Issue*

■ Arthur argues that the trial court erred when it held that the change or amendment to Indiana Code section 35–38–2.6–6 did not apply when it ordered Arthur's placement on home detention on

July 30, 2010; and that if the statutory provision only applied to those persons sentenced for crimes carrying non-suspendable sentences, then its application violates the state and federal constitutions.

As to his first argument, we turn to the statutory provisions relating to community corrections programs, which include placement "on home detention as part of a community corrections program." I.C. § 35–38–2.6–4.5. *Before* the new amendment, effective July 1, 2010, the term "credit time" provision for community corrections placements stated that " ' home' means the actual living area of the temporary or permanent residence of a person" but does "not include" a hospital, health care facility, hospice, group home, maternity home, residential treatment facility, boarding house or public correctional facility; and that "[a] person who is placed in a community corrections program under this chapter is entitled to earn credit time under IC 35–50–6 **unless the person is placed in the person's home.**" I.C. § 35–38–2.6–6(a) (superseded by amendment effective July 1, 2010 pursuant to P.L. 105–2010 Sec. 14).

Focusing on the bold-print language above, our Supreme Court held in *Purcell v. State,* 721 N.E.2d 220, 223 (Ind.1999), that "Ind.Code § 35–38–2.6–6 deprives the offender serving time on home detention of the ability to earn credit time under Ind. Code § 35–50–6," which "sets forth the procedures for earning good time credit." The bold-print language above was removed by the General Assembly, effective July 1, 2010.[2] We find such to demonstrate a clear legislative intent that an offender serving time on home detention would not be deprived of the ability to earn credit time. Thus, we agree with

Arthur that under the statute in effect at the time the trial court ordered his placement on home detention, he has the ability to earn credit time.

The trial court's order appears to acknowledge that the current statute authorizes the earning of credit time during a placement on home detention—but only "for persons receiving a direct placement," with such "direct placement" being the placement of "a person convicted of a felony whenever any part of the sentence may not be suspended under IC 35–50–2–2 or IC 35–50–2–2.1." (App.8, 77). As Arthur notes, this suggests that the trial court relied on the first section of the community corrections program chapter—stating that the chapter applies to a person sentenced for an offense whenever any part of the sentence therefor may *not* be suspended. I.C. § 35–38–2.6–1.

Arthur argues that to interpret the statute as providing that a placement on home detention whereby credit time may be earned is only possible for such offenders is "illogical," an "absurd result[ ]," "inconsistent with the statutory framework for home detention," and "unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause of the Indiana Constitution." Arthur's Br. at 12. Accordingly, he contends that we should find "the only reasonable construction" of the statute to result in a finding that he is entitled to credit time. *Id.* at 24.

We decline to reach Arthur's constitutional arguments, concluding that it would indeed be illogical to interpret the statute so as to allow the offender to earn credit time when placed on a home detention

---

2. The provision now simply states that "[a] person who is placed in a community corrections program under this chapter is entitled to earn credit time under IC 35–50–6." I.C. § 35–38–2.6–6(a).

community corrections program *only* if it is a direct placement of an offender who has committed an offense for which no portion of the sentence may be suspended. When there is a county community corrections plan that includes home detention, the use of home detention fosters the criminal justice goal of rehabilitation, with the concomitant promotion of the offender's potential future contributions to society. Moreover, home detention provides that various costs are borne by the offender, *see* I.C. § 35–38–2.6–4.5; and § I.C. 35–38–2.5–8 and –9, an additional consideration in these times of budget constraints. We find that a reasonable construction of the statute, as amended, and consistent with its purpose is that Arthur may earn credit time during his placement on home detention.

## 2. *State's Issue*

■ On cross-appeal, the State argues that the trial court lacked statutory authority to order that Arthur serve his suspendible sentences through participation in a community corrections program. And the State concedes that while it is judicially stopped from seeking a sentence different from what it recommended in the plea agreement, the trial court may not impose an illegal sentence. We find that the State's argument must fail on the basis of invited error. "The doctrine of invited error is grounded in estoppel," and under this doctrine, "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Wright v. State,* 828 N.E.2d 904, 907 (Ind. 2005).

Arthur's initial placement on work release was an express term of his plea agreement with the State—an agreement accepted by the trial court. The resulting sentencing placement was not appealed by either party. At the time the trial court considered Arthur's petition seeking modification of his commitment to work release in the county's community corrections program to a commitment to home detention in the county's community corrections program, there was no objection from the State. According to Arthur's petition, the State acknowledged the trial court's discretion to grant the modification, and the State never denied this assertion. Further, the trial court received a report indicating Arthur's eligibility for home detention. Granted, this is not a typical "invited error" pattern; however, we find the spirit of the doctrine to render it unacceptable for the State to now argue that the trial court's order committing Arthur to home detention placement cannot stand, but the originally agreed-to and now assertedly illegal work release placement should stand.

The trial court erred in ordering that Arthur was not eligible for credit time while serving his sentence on a commitment to home detention. We do not find, however, that the trial court erred in its order modifying Arthur's commitment.

Reversed and affirmed.

NAJAM, J., and BAILEY, J., concur.