**Tom JONES, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 982S377.**

Supreme Court of Indiana.

Aug. 31, 1984.

Joe Keith Lewis, Fishburne & Lewis, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This is a direct appeal from a conviction upon a plea of guilty to class B felony rape. Ind.Code § 35–42–4–1 (Burns Supp.1984). Appellant-Defendant Tom Jones was sentenced to ten years imprisonment plus an additional ten years for aggravating circumstances. He now requests a review of the trial court's imposition of an aggravated sentence upon him.

These are the facts that are pertinent to the appeal. On November 6, 1980, two eleven-year-old girls were walking to Franklin Elementary School in Marion, Indiana, when they were abducted by two men as they passed Crofton Industries. Ambrose Washington took the girl he abducted in one direction. Appellant took the girl he abducted in another direction to a

vacant building where he raped her. Washington was taken into custody by the police on the day of the commission of the crime. Jones was taken into custody in September of 1981.

On March 9, 1982, at the start of the second day of trial, Appellant changed his pleas of not guilty to one count of Rape, a class B felony. The trial court accepted Appellant's guilty plea and ordered the Probation Officer of Grant County to conduct a pre-sentence investigation and to submit a report. Later on March 16, 1982, the trial court moved its sentencing hearing date for Appellant from April 2, 1982, to April 16, 1982, upon learning that the Probation Department was sending Jones to the Reception-Diagnostic Center of the Indiana Department of Corrections for the purpose of a pre-sentence evaluation.

The findings of the Grant County Probation Department included the statement that use of the felony sentencing sheet resulted in the indication that Appellant should be sentenced to a minimum term of six years or be placed on probation. The probation officer who prepared the report, however, recommended to the trial court that Appellant be sentenced for the maximum time allowed under a class B felony. The probation officer stated that the age of the victim was the aggravating circumstance. The Reception-Diagnostic Center in its pre-sentencing evaluation of Appellant concluded that he would be a good candidate for probation or for a minimum sentence if the court deemed it appropriate. At the sentencing hearing, the trial court heard testimony from David Jenks, the probation officer who conducted Appellant's pre-sentence investigation and prepared the pre-sentence report, and from Howard Jones, Sr., Appellant's father. The court also heard arguments from counsel.

 In order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of its reasons for imposing the sentence. *Green v. State*, (1981) Ind., 424 N.E.2d 1014, *on remand* (1983) Ind., 451 N.E.2d 638. This statement of reasons must contain the following three elements: (1) It must identify all significant mitigating and aggravating circumstances—a failure to find either when clearly supported by the record may reasonably give rise to a belief that they were overlooked, hence not properly considered. (*See Page v. State*, (1981) Ind., 424 N.E.2d 1021; *on remand* (1982) Ind., 442 N.E.2d 977, *reh. denied* (1983); (2) It must include the specific reason why each circumstance is mitigating or aggravating; and (3) The mitigating circumstances must be weighed against the aggravating factors in order to determine if the aggravating circumstances offset the mitigating circumstances. Some articulation of this balancing process must be made in the record by the trial judge. *Spinks v. State*, (1982) Ind., 437 N.E.2d 963; *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316, *on remand* (1982) Ind., 441 N.E.2d 442.

In the instant case, the trial judge stated his reasons for imposing an aggravated sentence upon Appellant as follows:

"All right, the Court has heard the evidence and has extensively reviewed this case, Pre-sentence report and the report of Diagnostic Center and I would have a few comments of my own to add to this case this morning. I have listened to the evidence presented by the defendant as to mitigating circumstances, and the defendant's background. It does appear that he comes from a very stable and apparently respectable family. I'm impressed with his Father and the support he does have here this morning from his family, but we're not talking about a first offender here who's convicted of a crime of theft or burglary or even robbery. We're talking about a crime of violence which seems to permeate this community and our Nation. We're talking about one of the most heinous crimes that are probably on the books, at least insofar as female victims are concerned and insofar as perhaps a juvenile, small child, 11 years old is concerned. For purpose of the record, the Court has considered the report of the Indiana Di-

agnostic Center, but the Court does not give it any credibility at all. Statements were made in the report that the defendant perhaps suffers from undue pressure from his peers which may be true, but there are statements in the report that indicate that he was influenced by Ambrose Washington, and I think everyone in this room knows today, that there isn't anybody alive that could be influenced by Ambrose Washington. Ambrose is a retarded individual, that was clear at the trial, that was clear at both trials, that he underwent. We're talking about a young man that has an IQ of less than 60. And the Court is not convinced that the statements made in the reports of the Diagnostic Center, that Ambrose Washington can influence a person to commit a crime of this nature is supported by fact or any evidence in this case. It is therefore the judgment of this Court and will become an order that the defendant, Tom Jones, should be sentenced to the custody of the Indiana Department of Corrections for a fixed term of imprisonment of 10 years, plus an additional fixed term of 10 years for the following aggravating circumstances. The Court finds that the defendant is in need of correctional rehabilitative treatment because he shows no remorse for this crime and given the opportunity to make a statement, he did not do so, he is unemployed and seemingly lacks direction in his life which may result in perhaps the opportunity presented to him, for commission of other serious crimes of violence. The Court further finds that in this particular case, given the circumstances surrounding the case, uh—the fact that the victim was a small child of only 11 years of age, and incapable of defending herself from attack—uh—that the imposition of reduced sentence would depreciate the seriousness of the crime."

■ Appellant now specifically contends, *inter alia,* that the trial court erred by failing to consider the Reception-Diagnostic Center report. We do not agree. We believe the authority and responsibility of the trial judge is to give such weight to a report such as this as he determines it deserves. He is the sentencing authority and can accept or reject recommendations made to him so long as it appears that his decision was reasonably made. The question is not whether any of us or all of us would ultimately agree with the trial judge's appraisal of this report. The question is whether the trial judge duly considered this and other matters before him and made a reasonable determination as to the sentence to be imposed. The record quoted above clearly indicates that he did. We can't help but observe in passing that we find merit in the trial court's opinion that the conclusion of those making the Reception-Diagnostic Center report finding that one rapes an 11 year-old-girl because of peer pressure was not credible and does not deserve consideration. We also pause to comment upon the following remark by the trial judge:

> "[W]e're not talking about a first offender here who's convicted of a crime of theft or burglary or even robbery. We're talking about a crime of violence...."

What we infer this statement to mean is that the instant crime is of such violence that the trial judge could not consider lack of a prior record to be mitigating. This is a judgment he had the responsibility and authority to make. While we do not agree with the implication he makes as to the characterization of theft, burglary or robbery as crimes lacking in violence, we find merit in his statement that the personal violence of the crime in question is certainly without question. We therefore see no shortcoming in the conclusion he makes in this regard.

■ We now hold that the trial judge's statement in support of Appellant's aggravated sentence is more than sufficient to comply with our sentencing mandate in *Abercrombie.* Specifically, the trial judge's statement clearly indicates that he identified, explained and weighed the mitigating and aggravating circumstances he found in this case. The trial judge acknowledged Appellant's "stable" and "ap-

parently respectable" background but determined that his attitude and conduct suggested the "commission of other serious crimes of violence." The judge also determined that Appellant was in need of "correctional rehabilitative treatment" and that the imposition of a reduced sentence "would depreciate the seriousness of the crime." This Court finds that these reasons represent proper sentencing factors pursuant to Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7 (Burns 1979)] [repealed effective September 1, 1983; replaced by § 35–38–1–7 (Burns Supp.1984)] and provide a most sufficient basis for Appellant's aggravated sentence. Moreover, we do not find that Appellant's aggravated sentence was manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sent. 2. Accordingly, we find no error and affirm the trial court in all things.

GIVAN, C.J., and HUNTER, J., concur.

DeBRULER, J., dissents with separate opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

I must dissent from the majority wherein it holds that the trial court's statement of reasons for imposing an enhanced sentence in this cause is sufficient. The Court correctly states the legal prerequisites for a valid statement of reasons, and then fails to enforce those requirements here. I agree that appellate judicial deference for the sentencing decision should be substantial, but this should not go so far as to sanction the assignment by the sentencing court of zero mitigating value upon substantial mitigating circumstances. It is one part of the sentencing process to assign values to aggravating and mitigating circumstances, and quite another to thereafter engage in the balancing process, and to permit the one to offset the other.

*First*, the record demonstrated that the appellant did not have prior criminal record or any juvenile involvement with the law. The trial court dispensed with appellant's prior record by stating:

"But we're not talking about a first offender here who's convicted of a crime of theft or burglary or robbery. We're talking about a crime of violence . . ." The implication here is that the absence of prior criminality is a mitigating circumstance in lesser crimes, but not a mitigating circumstance in violent crimes. This implication is erroneous.

Absence of prior criminality is a significant mitigating circumstance in all cases, and the sentencing court must identify it as such and give it a substantial positive value. The mere mention that appellant is a first offender is not sufficient for this purpose.

*Second,* there was no adequate identification and consideration of yet another mitigating circumstance. The record clearly indicated that appellant was independently evaluated by two professional agencies and the reports from both contained conclusions that he was a good candidate for probation or a minimum sentence. The one prepared by the court's own officer did end up recommending a maximum sentence because of the age of the victim, and it is perfectly obvious that such recommendation, because of its age basis, is a very minor part of the professional evaluative report. Certainly I do not mean to imply that appellant should have received either of those dispositions of probation or minimum sentence, but what I would insist upon is that the record reflect that evaluations of this important type be given reasonable and discrete consideration.

The trial court rejected the Reception-Diagnostic Center's report on the basis of a false assumption. The trial court rejected the entire report because it contained a statement that appellant may have engaged in criminal conduct due to peer pressure. The trial court interpreted "peer pressure" to mean something akin to blackmail and concluded that the Reception-Diagnostic Center's report was not credible because the trial court determined that it was impossible for Ambrose Washington, the retarded accomplice, to overbearingly influence appellant into committing the

crime. Peer pressure, however, originates from within, and the motivation to do an act does not come from outside threats, but from a desire to belong to a group. Regardless, the statement on "peer pressure" was only a very minor part of the Reception-Diagnostic report, and the trial court erred in rejecting the entire report because of it.

The trial court erred when it failed to assign substantial value to the fact of absence of prior criminality and to the substance of the two professional reports. As I see the process of balancing aggravating and mitigating circumstances, it involves placing each set upon the opposing pans of the balance scale and "reading" the result. It does not involve placing then upon the pans and then removing the mitigating values until equipoise of the judicial conscience is reached.

This case should be remanded to the trial courts with instructions to conduct a new sentencing hearing.

PRENTICE, J., concurs.