**SUREEPORN ROLL a/k/a Sandy Roll, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 1–884A203.

Court of Appeals of Indiana, First District.

Jan. 24, 1985.

Terry A. White, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Kenneth P. Williams, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

1. Community based work release programs are authorized under Indiana Code section 11–10–

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Sureeporn Roll appeals from her conviction for Trafficking with an Inmate, a class D felony, and from the two year sentence subsequently imposed. We affirm.

## FACTS

While employed in a jobs program sponsored by the Second Chance Halfway House, Sureeporn Roll befriended one of the halfway house residents, Terry Stokes. In addition to sponsoring programs such as the one which employed Roll, the Second Chance Halfway House provides community based work release programs, under contract with the Indiana Department of Corrections, for minimum security "committed offenders."[1] At the time of the incident at issue here, Terry Stokes was a "committed offender" enrolled in this work release program.

During the first few days of November, 1983, Roll stayed at the home of James Voight. On November 3, 1983, Roll addressed a greeting card to Terry Stokes. After sealing the envelope, however, Roll apparently experienced second thoughts about communicating with Stokes. Consequently, instead of mailing the card, she placed it on Voight's kitchen table. The following morning, Voight, a United States Postal Service employee, mailed the envelope believing that had been Roll's purpose in leaving it on the table. Roll had not, though, expressly authorized Voight to mail the envelope.

The envelope arrived at the Second Chance Halfway House the following day. Halfway house counselors, while inspecting the resident's mail, became suspicious of Roll's envelope. The feel of the envelope and the sound it made when it was handled indicated to them that it contained contraband. When the envelope was opened 0.2 grams of marijuana was found inside.

8–1 et seq. (Burns 1981).

Subsequently, an Information was filed in the Vanderburgh Circuit Court charging Roll with Trafficking with an Inmate as a class D felony. Following a jury trial, Roll was found guilty and sentenced to two years incarceration. She now appeals.

## ISSUES

Appellant Roll presents the following issues for review by this court:

1. Whether the Second Chance Halfway House is a "penal facility" as that term is defined in the Indiana Code.

2. Whether the search of the envelope violated the Fourth Amendment of the United States Constitution.

3. Whether the trial court erred when it permitted the introduction of evidence of Roll's prior possession of marijuana.

4. Whether the trial court erred when it gave, over Roll's objections, several of the State's and the trial court's tendered instructions.

5. Whether the trial court erred when it refused to give an instruction, tendered by Roll, defining "controlled substances."

6. Whether the trial court erred when it refused to give Roll's tendered instruction setting out the mistake of fact defense.

*Issue One*

■ Roll was charged with Trafficking with an Inmate, a class D felony. Indiana Code section 35–44–3–9 (Burns Supp.1984), defines that offense as follows:

"A person who, without the prior authorization of the person in charge of a penal facility, knowingly or intentionally:

(1) Delivers, or carries into the *penal facility* with intent to deliver, an article to an inmate of the facility;

. . . . .

commits trafficking with an inmate, a class A misdemeanor. However, the offense is a:

(1) Class D felony if the article is a controlled substance.... [Emphasis supplied.]"

Roll argues that the Second Chance Halfway House is not a "penal facility" and, hence, she could not be convicted of Trafficking with an Inmate as the offense is defined in the statute. We disagree with Roll's characterization of the Second Chance Halfway House.

The Second Chance Halfway House is in fact a "penal facility." Indiana Code section 35–41–1–21 (Burns Supp.1984), defines "penal facility" as a "... state prison, reformatory, county jail, penitentiary, house of correction, state farm, *or any other facility for the confinement of persons* under sentence, or awaiting trial or sentence, for offenses. [Emphasis supplied.]" Despite its outward appearance, the halfway house is a "facility for the confinement of persons."

The Second Chance Halfway House is under contract to the Indiana Department of Corrections to provide community based work release programs for minimum security individuals committed to the department's custody. By necessity, its security measures are substantially relaxed in comparison to those of correctional institutions housing more dangerous individuals. Halfway house residents are not, however, permitted to leave without prior authorization. Those who do are considered "escapees" and are subject to immediate arrest. This is sufficient to bring the Second Chance Halfway House under the statutory definition of a "penal facility." [2]

---

2. In determining that the Second Chance Halfway House is a "penal facility," we are not unmindful of Indiana Code section 11–8–1–6 (Burns 1981). That provision states:

" 'Confined' has the same meaning as 'committed' except it does not refer to any part of

    (1) Parole;

    (2) A minimum security assignment to a program requiring periodic reporting to a designated official; or

    (3) Intermittent service of a term of imprisonment that does not entail imprisonment in a correctional or penal facility."

Although neither party addressed the potential impact of this statutory definition on our decision, we feel compelled to briefly consider it here.

While the statute is not directly related to the issue with which we are concerned, the second subsection is arguably applicable to those com-

In her brief to this court, Roll seems to argue that, because the halfway house setting provides little or no challenge to those who wish to escape, it lacks the confining qualities of a true "penal facility." However, as we stated above, the Second Chance Halfway House imposes significant restrictions on the freedom of its residents. The degree of success of these measures does not affect its standing as a "penal facility." Thus, Roll was properly charged with Trafficking with an Inmate.

*Issue Two*

Roll next asserts that the marijuana discovered by halfway house counselors during their search of the envelope should not have been admitted into evidence. In essence, she argues that the search of the envelope without a search warrant and on less than probable cause violated her Fourth Amendment rights.[3] Consequently, Roll maintains, any evidence discovered as a result of the illegal search of the envelope should have been excluded by the trial court. In order to properly address the arguments advanced by Roll we must first briefly discuss the parameters of the Fourth Amendment.

■ The fundamental precept of the Fourth Amendment guarantees is that individual privacy should not be subjected to unreasonable intrusions by governmental authorities. *Delaware v. Prouse* (1979), 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667; *Terry v. Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 899; *Carroll v. United States* (1925), 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543, 549. Thus, our primary concern must be whether or not the search was reasonable. In order to make this determination, the legitimate governmental interests underlying the particular intrusion must be balanced against the degree of intrusion on individual privacy, reasonableness presupposes the existence, prior to the search, of some "quantum of individualized suspicion," whether that be labeled probable cause or reasonable suspicion.[4] *Id.; United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116, 1130. Application of these general principles to the facts of this case reveals that the search of Roll's envelope was in fact reasonable.

■ The Second Chance Halfway House's interests in examining resident's incoming mail outweighs the slight intrusion on individual privacy. Although the halfway house differs from a traditional correctional institution in many fundamental aspects, its interest in preventing the introduction of dangerous contraband into the facility is nonetheless significant. The

mitted offenders residing at the halfway house. Our review of the record indicates, however, that these committed offenders were not assigned to a program which merely required periodic reporting to a designated official. Rather, they were confined to the halfway house at all times except when expressly authorized to leave the facility. Thus, we remain convinced, despite this provision, that the Second Chance Halfway House is a "penal facility" as that term is defined in Ind.Code § 35–41–1–21.

3. In their briefs, the parties also debate the applicability of Indiana Code section 11–11–3–4(a) (Burns Supp.1984). That provision states in part:

"Correspondence with general public.—(a) If correspondence is from a person not enumerated in section 3[11–11–3–3] of this chapter, it may be opened to inspect for and remove contraband or prohibited property and to permit removal of funds for crediting to the confined person's account. That piece of correspondence may not be read, censored, copied, or otherwise interfered with in regard to its prompt delivery unless the department has reasonable grounds to believe that:

(1) It poses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program; or

(2) It is prohibited under section 2(b) [11–11–3–2(b) ] of this chapter. The confined person must be informed of the removal of funds, including the amount."

In view of the manner in which we have resolved the Fourth Amendment question, we see no need to determine whether or not this statute applies to the fact situation now before this court.

4. Probable cause, while a constitutional prerequisite to the issuance of a search warrant, is not an indispensible element of a reasonable search. *See* Berner, *Search and Seizure: Status and Methodology* 8 Val.U.L.Rev. 471 (1974).

influx of items such as guns and drugs is of great concern even in the relaxed environment of a halfway house. By comparison, the intrusion on Roll's privacy resulting from the search of her envelope was rather minimal. In this particular case, the counselors merely opened the envelope and shook out its contents without reading anything. Furthermore, we note that the counselors acted only after developing a reasonable suspicion that the envelope contained contraband.[5] We conclude, therefore, that the search conducted by the halfway house counselors satisfied the reasonableness requirement of the Fourth Amendment. The evidence procured during this search was properly admitted.

### Issue Three

■ The next allegation of error presented by Roll concerns the denial of her Motion in Limine and the subsequent admission of evidence relating to her prior possession of marijuana. At trial, counsel for Roll initially objected to the introduction of this evidence. However, during his direct examination, he elicited an admission from Roll that she had in fact possessed marijuana shortly before she mailed the card to Terry Stokes. In addition, the prosecuting attorney, without objection, elicited virtually the same admission during his cross-examination of Roll. Consequently, Roll has failed to preserve any error occurring as a result of either the denial of her Motion in Limine or the subsequent admission of the challenged evidence. *Tabor v. State* (1984), Ind., 461 N.E.2d 118, 121; *Bray v. State* (1982), Ind., 430 N.E.2d 1162, 1165; *Owens v. State* (1981), Ind., 427 N.E.2d 880, 885.

### Issue Four

■ Roll next objects to the particular langauge employed in several instructions tendered by both the State and the trial court. She does not argue that the substance of the instructions should not have been given. Rather, she asserts that the wording of the instructions should have been modified before they were read to the jury. Roll has, however, waived any error occasioned by the giving of these instructions because she failed to tender any written instructions covering the same areas as those covered by the challenged instructions. *Hedrick v. State* (1982), Ind., 430 N.E.2d 1150, 1156; *Begley v. State* (1981), 275 Ind. 235, 416 N.E.2d 824, 827.

### Issue Five

Roll further contends that she was entitled to an instruction defining "controlled substances."[6] She failed to tender such an instruction in writing however. Consequently, this alleged error has also been waived. *Lane v. State* (1983), Ind., 451 N.E.2d 659, 660.

### Issue Six

■ Finally, Roll asserts that the trial court committed reversible error when it refused her tendered instruction based on the mistake of fact defense. That instruction stated:

"DEFENDANT'S INSTRUCTION NO. 5

The defense of mistake of fact is defined by law as follows:

It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.

The reasonable mistake about a fact must have prevented the defendant from forming the intent to commit the offense of which she is charged or knowing that

---

5. We note only that a quantum of individualized suspicion did in fact exist prior to the search in question here. It is, therefore, unnecessary for us to determine whether, in this fact situation, such a quantum of individualized suspicion is a necessary prerequisite to a finding that a particular search was reasonable.

6. When the article delivered to an inmate of a penal facility is a "controlled substance," Trafficking with an Inmate becomes a class D felony. Indiana Code section 35–44–3–9 (Burns Supp.1984).

the offense charged was being committed.

The State has the burden of disproving this defense beyond a reasonable doubt." Record at 81. When reviewing the refusal to read a tendered instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and, (3) whether the substance of the tendered instruction is covered by other instructions actually given. *Davis v. State* (1976), 265 Ind. 476, 478, 355 N.E.2d 836, 838; *Rose v. State* (1982), Ind.App., 431 N.E.2d 521, 522, *trans. denied.* Applying this test to the facts in the record before us, we must conclude that the trial court committed no error when it refused Roll's mistake of fact instruction.

■ The mistake of fact defense has a long history in this state.[7] It is available as a defense where the defendant, acting under a reasonable and honest mistake concerning a fact or facts; commits an act which, if the facts were as the defendant believed them to be, would not be criminal. *Davis*, 265 Ind. at 478–79, 355 N.E.2d at 838; *Squire v. State* (1874), 46 Ind. 459, 463. Thus, where a man asports the umbrella of another, reasonably and honestly believing it to be his own, he is entitled to employ the mistake of fact defense. *See* W. LaFave & A. Scott, *Criminal Law* § 47

(1972). This is not, however, the situation with which we are presented.

■ Roll's theory is somewhat confusing. She seems to argue that the fact about which she was reasonably and honestly mistaken is whether she gave Voight permission to mail the envelope she had addressed to Terry Stokes. The theory she offers is not that, had the facts been as she believed them to be, the act she committed would not have been criminal. Rather, her argument appears to challenge the finding that an agency relationship existed between her and Voight for the purpose of mailing the envelope. The jury was properly instructed on the agency issue. Roll was not entitled to a second instruction on this question improperly fashioned as a mistake of fact defense. *Jarrett v. State* (1984), Ind., 465 N.E.2d 1097, 1100. The evidence presented in this case does not support the giving of a mistake of fact instruction. Therefore, the trial court properly refused her tendered instruction.

Finding no error requiring reversal, we affirm the judgment of the trial court.

ROBERTSON and NEAL, JJ., concur.

7. The defense is presently codified in Indiana Code section 35–41–3–7 (Burns 1979), which states:

"It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact if the mistake negates the culpability required for commission of the offense."