**Gerald David DIXON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A05–9604–CR–161.

Court of Appeals of Indiana.

Sept. 16, 1997.

Jeffrey D. Stonebraker, Chief Public Defender, Vicki L. Carmichael, Assistant Public Defender, Jeffersonville, for Appellant–Defendant.

Jeffrey D. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Gerald Dixon appeals his sentence for operating a vehicle while intoxicated resulting in death, a class C felony, operating a vehicle with a .10% or more blood alcohol content ("BAC") resulting in death, a class C felony, operation of a vehicle while intoxicated resulting in serious bodily injury, a class D felony, and operation of a vehicle with a .10% or more BAC resulting in serious bodily injury, a class D felony. Dixon raises three issues for our review, which we restate as:

1) whether the trial court failed to consider the existence of mitigating factors in determining his sentence;

2) whether the trial court erroneously denied him good time credit for time spent in an in-patient rehabilitation program and a half-way house prior to his conviction; and

3) whether the trial court erroneously entered an order of license suspension of his driver's license, without his presence after the sentencing hearing.

We affirm.

The facts most favorable to the judgment follow. On April 16, 1994, Dixon's vehicle crossed the center line and struck another vehicle, causing the death of Alvin Widmer and seriously injuring Mary Widmer. On April 25, 1994, Dixon was arrested and charged with multiple substance related offenses. On the following day, he was released on electronic home detention pending trial.

On August 22, 1994, Dixon, with the trial court's permission, entered Turning Point, an in-patient substance abuse rehabilitation program. After completion of this thirty day program, Dixon went to Serenity House, a half-way house which specialized in working with alcoholics.

On April 18, 1995, Dixon plead guilty to four counts and was incarcerated until his sentencing. On June 27, 1995, the trial court sentenced Dixon to four years plus an enhancement of four years. The trial court gave Dixon credit for the days spent on electronic home detention and for the time he spent in jail prior to sentencing, but denied Dixon credit for the time spent in the rehabilitation program and the half-way house.

On July 3, 1995, the trial court entered an "Order of License Suspension" for five years. Dixon was not present when this order was entered. Dixon now appeals his sentence.

## I.

The first issue raised for our review is whether the trial court failed to consider

the existence of mitigating factors in determining Dixon's sentence. Sentencing is left to the sound discretion of the trial court. *Barany v. State,* 658 N.E.2d 60, 67 (Ind. 1995). The trial court is the sentencing authority and can accept or reject sentencing recommendations as long as the decision is reasonably made. *Jones v. State,* 467 N.E.2d 681, 684 (Ind.1984).

■ Where the trial court finds the existence of aggravating or mitigating circumstances, it is required to state its reasons for the sentence imposed. Ind.Code § 35–38–1–3. The statement should include an identification of the significant aggravating and mitigating circumstances, specific facts and reasons leading the court to find the existence of such circumstances, and an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Harris v. State,* 659 N.E.2d 522, 527–528 (Ind. 1995). However, the finding of mitigating circumstances is not required and falls within the trial court's discretion. *Id.* at 528; *see also Jones,* 467 N.E.2d at 684 (holding that it was appropriate for the trial court to find that lack of a prior criminal record was not a mitigating factor in light of the violent nature of the crime committed). Further, "[a] trial court is not obligated to explain why it has not chosen to find mitigating circumstances." *Harris,* 659 N.E.2d at 528.

Dixon argues that the trial court failed to consider mitigating factors when sentencing him. He presented several witnesses at the sentencing hearing who testified about his good character traits, his work ethic, and his cooperation and participation in the substance abuse programs, suggesting that he had reformed himself. After the presentation of the evidence, the trial court stated that "given the history of Mr. Dixon, his criminal history, ... there is [sic] really no mitigating circumstances before this particular Court." Record, p. 400. Given Dixon's four prior convictions for alcohol related offenses, we find that the trial court's rejection of the mitigating factors proposed by Dixon

was reasonable. *See Jones,* 467 N.E.2d at 684. Had the trial court found the existence of mitigating circumstances, it would have been obligated to state its reasons for such a finding. *See* I.C. § 35–38–1–3; *Harris,* 659 N.E.2d at 527. Here, the trial court found that there were no mitigating factors and was not required to explain why the proposed mitigating circumstances had been rejected. *See Harris,* 659 N.E.2d at 528. Therefore, we find that the trial court did not erroneously fail to consider the existence of mitigating factors when it sentenced Dixon. *See id.*

## II.

■ The next issue we must address is whether the trial court erroneously denied Dixon good time credit for time he spent in an in-patient rehabilitation program and a half-way house prior to his conviction. A person imprisoned awaiting trial for a crime is initially assigned to class I for the purpose of calculating credit time. I.C. § 35–50–6–4. Pursuant to I.C. § 35–50–6–3 ("the good time credit statute"), "[a] person assigned to class I earns one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." I.C. § 35–50–6–3. Dixon contends that he is entitled to credit for the time spent in these rehabilitation programs because such programs constitute "confine[ment] awaiting trial." I.C. § 35–50–6–3.

Dixon primarily relies on *Capes v. State* in which our supreme court held that pretrial home detention qualified for good time credit. *Capes v. State,* 634 N.E.2d 1334 (Ind. 1994). Although the supreme court recognized that the underlying policy for giving good time credit was not supported by giving credit for pretrial or post-conviction home detention[1], it nevertheless concluded that pretrial home detention should qualify for credit because I.C. § 35–38–2.6–6 allowed credit for individuals assigned to a community corrections program and placed on home detention. *Capes,* 634 N.E.2d at 1335.

---

1. This policy is "to encourage inmates of penal institutions to behave well while confined, improve their morale and thus help prison authori-

ties to maintain order and control." *Dunn v. Jenkins,* 268 Ind. 478, 485, 377 N.E.2d 868, 873 (1978).

However, *Capes* is not controlling on the issue of good time credit for voluntary rehabilitation programs because that case concerned credit for home detention. Participation in voluntary rehabilitation programs is not equivalent to serving time on home detention. Dixon's freedom was much greater while participating in these programs than with home detention where a defendant's movements are generally limited to travel to and from work and are supervised by the court. *See* I.C. § 35–38–2.5–6. Dixon's liberties were not so restricted. While at the half-way house, Dixon could be out until 11:00 p.m. on weekdays and as late as 2:00 a.m. on the weekends. Residents could also earn overnight passes. Aside from the court granting permission for Dixon to participate in these programs, there is no other evidence that the court had any direct supervision over Dixon or monitored his movements during this period. Dixon was graciously allowed by the court to participate in these rehabilitation programs for his own benefit and he chose to do so voluntarily. Consequently, we find that voluntary rehabilitation programs are less restrictive and are, therefore, not equivalent to home detention. Thus, *Capes* is distinguishable from the facts before us.

Returning to the language of the good time credit statute for our analysis, we also find that, given their less restrictive and voluntary nature, such rehabilitation programs do not constitute "confinement" within the meaning of the statute and, thus, do not qualify for good time credit. *See* I.C. § 35–50–6–3. Therefore, it was not error for the trial court to deny Dixon credit for the time spent in the rehabilitation program and the half-way house.

### III.

■ Finally, we must determine whether the trial court erroneously entered an order of license suspension without Dixon's presence after the sentencing hearing. When a trial court enters a conviction for certain substance related offenses, it must also recommend the suspension of the defendant's driver's licenses as follows:

"If the conviction under consideration by the court is for an offense under:

(1) Section 4 [IC 9–30–5–4] of this chapter;

(2) Section 5 [IC 9–30–5–5] of this chapter;

(3) IC 14–15–8–8(b); or

(4) IC 14–15–8–8(c);

the court shall recommend the suspension of the person's driving privileges for at least two (2) years but not more than five (5) years."

I.C. § 9–30–5–10(e).

Because Dixon was convicted under both I.C. § 9–30–5–4 and I.C. § 9–30–5–5, the trial court was required to enter an order recommending the suspension of his license. Dixon argues that his presence was required when the trial court made such an order because it constituted a revision of his sentence. I.C. § 35–38–1–15. We disagree.

First, I.C. § 9–30–5–10 is not a sentencing statute. It does not grant the trial court the authority to suspend the defendant's license, but requires the trial court to make a recommendation of suspension to the Bureau of Motor Vehicles.[2] *See* I.C. § 9–30–6–12. This procedure is administrative in nature and is a "statutory scheme [that] conditions the use of a driver's license on the observation of certain rules and operating standards meant for public safety; the suspension or revocation of the license merely signifies the failure of the licensee to comply therewith." *Schrefler v. State*, 660 N.E.2d 585, 588 (Ind. Ct.App.1996), *reh'g denied.*

Secondly, the statute does not provide for a predeprivation hearing. Section (a) of the statute states that "the court shall, after reviewing the person's bureau driving record and other relevant evidence, recommend the suspension of the person's driving privileges for the fixed period of time specified under this section." I.C. § 9–30–5–10(a). Thus, the trial court's only duty is to review the

---

**2.** We note that the language of the trial court's order does appear to order the suspension of Dixon's driver's license. However, the trial court referenced I.C. § 9–30–5–10 in its order, and therefore we presume that the trial court recommended suspension pursuant to the statute.

evidence before recommending the suspension. *See id.* We find that the trial court had sufficient opportunity to weigh the evidence presented at the sentencing hearing before it made a recommendation. Just as the evidence of Dixon's four previous substance related offenses supported the four year sentence enhancement, we find that the same evidence also supports the recommendation of the maximum five-year suspension.

Furthermore, because a license to drive is a privilege and not a right, a subsequent hearing, in addition to a full sentencing hearing, is not required by due process. *Mitchell v. State,* 659 N.E.2d 112, 116 (Ind.1995) (holding that driving privileges are not a fundamental right and a statute requiring a license suspension after a conviction for possession of cocaine did not violate substantive due process). Therefore, we find that the trial court did not err by entering the mandatory recommendation of license suspension without the presence of the defendant after previously conducting a full sentencing hearing. *See* I.C. 9–30–5–10(a); *Mitchell,* 659 N.E.2d at 116.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

NAJAM and RUCKER, JJ., concur.