

ATTORNEY FOR APPELLANT

Jerry T. Drook
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cody R. Hickman, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 1, 2017 <br><br> Court of Appeals Case No. 27A02-1701-CR-59 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Jeffrey D. Todd, Judge <br><br> Trial Court Cause Nos. 27D01-1209-FD-132, 27D01-1209-FB-133 |

**Mathias, Judge.**

[1]     In this probation revocation case, we consider whether the trial court abused its discretion in concluding that Cody R. Hickman ("Hickman") was not entitled to accrued time against his sentence for time spent in a halfway house as part of a reentry-court program and as a condition of his probation.

We affirm.

## Facts and Procedural Posture

In November 2012, Hickman pleaded guilty in Grant Superior Court to three counts of burglary and theft under Cause Number FB-133 and admitted a probation violation in Cause Number FD-132, whereunder he had pleaded guilty to theft and resisting law enforcement in April 2012. In December 2012, Hickman was sentenced to a mix of executed and suspended time on the new conviction and violation, including a total of four years supervised probation.

Hickman served time in prison, was released, and began his four-year probation in Grant County in January 2015. As a condition of his probation, Hickman was required to successfully complete Grant County's reentry-court program.[1] Through reentry court, Hickman came to live at Grace House, apparently a halfway house, or, as Hickman assures us without record citation, "a residential program established to help men in their process of recovery from substance abuse/addiction." Appellant's Br. at 12.

During his stay at Grace House, and as part of reentry court in general, Hickman was required to keep a 10:00 p.m. to 6:00 a.m. curfew during "Phase 1" of the program. Tr. pp. 22–23. Hickman asserts that he "was required to be at Grace House unless he had signed out for work or group meetings or to see

---

[1] Reentry courts are "problem solving court[s] . . . focused on the needs of individuals who reenter the community after a period of incarceration . . . that may provide a range of necessary reintegration services for eligible individuals, including the following [seven listed services]." Ind. Code § 33-23-16-9.

his probation officer." Appellant's Br. at 7. This assertion apparently rests on the following testimony from Hickman's probation officer and case manager concerning Hickman's compliance (or lack of it) with reentry-court program rules:

> [Hickman] was living in the Grace House in, um, October of 2016, and he was, um, signed up for—or he was working, um, at, uh, Hardy's . . . in the Gas City I69 exit, and he was supposed to sign out, um, to go to, uh, daily schedule, um, at the Grace House, to go to work or groups or come see me, and he was signing out to leave the Grace House and, um, he did—he was no longer working, and he was not reporting that to Reentry Court staff or Grace House staff, and so he was leaving the Grace House, um, under the, um, belief that he was going to work and doing a prosocial event when he was not doing that, he was just out, um, doing whatever he wanted to do. This happened, uh, . . . five times [in October 2016].

Tr. pp. 18-19.

[6]     It does not appear from the record precisely how long Hickman was at Grace House, but it was apparently not for the entire period of his participation in reentry court. *See* Appellant's App. p. 11 (chronological case summary entry dated September 6, 2016, approving one month's stay at Grace House). In any event, the State petitioned to revoke Hickman's participation in reentry court in June 2016, less than a year and a half after Hickman began the reentry-court program in January 2015, and then again on October 25, 2016. Between January 2015 and October 25, 2016, Hickman tested positive for marijuana five times; broke curfew eight times; missed two "Saturday Work Crew[]"

assignments; patronized a bar twice; pleaded guilty to battery causing serious bodily injury, disorderly conduct, possession of marijuana, and possession of paraphernalia under three separate cause numbers; and totally absconded from the program for two months from June 2016 to August 2016 — all in violation of program rules. Appellant's App. p. 50; Tr. pp. 30, 33.

[7] The trial court granted the State's second petition to revoke Hickman's reentry-court participation on November 14, 2016. The State then petitioned to revoke Hickman's probation the same day. At the conclusion of a revocation hearing on December 13, 2016, the court granted the State's petition and ordered Hickman to execute his four-year suspended sentence. The court credited Hickman with seventy-eight days against that sentence for time served in jail since January 2015, but denied Hickman's request for additional credit for the "period of time where his liberties and freedoms ha[d] been taken away" at Grace House during his reentry-court participation. Tr. p. 50.

[8] This timely appeal followed. Hickman challenges the trial court's denial of credit time for time spent at Grace House.

## Standard of Review

[9] In general, imposing sanction for a probation violation lies within the trial court's sound discretion, and we will reverse only for abuse of that discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). A trial court abuses its discretion by ruling in a way clearly against the logic and effect of the facts and circumstances before it, or by misinterpreting the law. *Id.* Because credit time is

a matter of statutory right, if a trial court finds that a person comes within the statutory entitlement, the court has no discretion in awarding it. *Purdue v. State*, 51 N.E.3d 432, 436 (Ind. Ct. App. 2016).

## Discussion and Decision

[10] "'Accrued time' means the amount of time a person is imprisoned or confined." Ind. Code § 35-50-6-0.5(1). A convicted person is entitled to have any accrued time counted against his sentence, along with any other credit time. *Id.* at (2) ("credit time" includes accrued time, good time credit, and education credit); I.C. § 35-50-6-1(a). "'Imprison' means to confine in a penal facility . . . ," I.C. § 35-31.5-2-166(1), and "'[p]enal facility' means . . . any . . . facility for confinement of persons under sentence[.]" I.C. § 35-31.5-2-232. "Confinement" is without statutory definition for these purposes.

[11] "[S]ubstantial control . . . less than incarceration can constitute" confinement in the sense of imprisonment. *Capes v. State*, 634 N.E.2d 1334, 1335 (Ind. 1994) (holding pretrial home detention entitles pretrial detainee to accrued time against sentence), *overruled by Franklin v. State*, 685 N.E.2d 1062, 1064 (Ind. 1997), *overruled by Purcell v. State*, 721 N.E.2d 220, 223–24 (Ind. 1999). If a person is "shut up or restrain[ed] . . . of his liberty" "under the control" of law enforcement or corrections authorities, he may be "confined" or "imprisoned" within the meaning of the statutory language. *Id.* (quoting *State by Kahn v. Woodward*, 123 Ind. 30, 23 N.E. 968, 969 (1889)). However, we note that Hickman has cited no authority, and we find none, holding that a person was

"confined" or "imprisoned" during a placement at a halfway house and thus entitled to accrued time.

[12] Home detention is confinement and entitles the detainee to accrued time, I.C. § 35-38-2.5-5(e); I.C. § 35-38-2.6-6(b); *Senn v. State*, 766 N.E.2d 1190, 1199 (Ind. Ct. App. 2002), as is work release. *Senn*, 766 N.E.2d at 1203. Daily reporting probation, by contrast, affording a probationer nearly the same degree of freedom of movement, autonomy, and privacy as living at liberty, does not involve "the type of freedom restrictions that deserve credit time." *Reed v. State*, 844 N.E.2d 233, 225 (Ind. Ct. App. 2006). A halfway house has been held to be a "penal facility" within the meaning of the definition cited above, *Roll v. State*, 473 N.E.2d 161, 163–64 (Ind. Ct. App. 1985) (affirming conviction for trafficking with an inmate), but not every halfway house is a penal facility. *Oswalt v. State*, 749 N.E.2d 612, (Ind. Ct. App. 2001) (affirming denial of accrued time for time served in halfway house, distinguishing halfway house in *Roll*).

[13] Our decisions have found the following factors relevant in determining whether a person is confined or imprisoned in a placement and thus earns accrued time: whether the placement was requested by the person as a condition of probation or was otherwise voluntary, *Oswalt*, 749 N.E.2d at 615; *Dixon v. State*, 685 N.E.2d 715, 718 (Ind. Ct. App. 1997); the degree of freedom of movement enjoyed by the person, *Reed*, 844 N.E.2d at 225; *Oswalt*, 749 N.E.2d at 615; *Dixon*, 685 N.E.2d at 718; the degree of direct supervision over the placement exercised by the Department of Correction, a court, or another state actor;

*Oswalt*, 749 N.E.2d at 614 (distinguishing *Roll*, 473 N.E.2d at 163); *Dixon*, 685 N.E.2d at 718; and the degree of autonomy and privacy enjoyed by the person in the conduct of his everyday life. *Reed*, 844 N.E.2d at 225; *Oswalt*, 749 N.E.2d at 614.[2]

[14] In this light, we conclude that Hickman was not confined or imprisoned during his time at Grace House. First, it does not appear from the record that the Grace House placement was involuntary. It is true that participation in reentry court was required of Hickman as a condition of his probation, Appellant's App. pp. 37, 39, and that the Grace House placement was part of the reentry-court program. *Id.* at 11. Hickman asserts further that, "[a]s part of his required participation in reentry court, Hickman was *ordered* to stay at Grace House," Appellant's Br. at 12 (emphasis added), but he provides no record citation in support of this assertion, and we find no support for it in the record. In other words, while Hickman has shown that participation in reentry court was required of him, he has not shown the same to be true of his placement at Grace House. Reentry court is a flexible tool. It may be that Grant County reentry court offers its participants a range of options for successful completion, or

_____

[2] We have also looked to whether absconding from the placement exposes the person to criminal liability for escape, *Oswalt*, 749 N.E.2d at 614, but in general this begs the question. "Escape" is defined as flight from "lawful detention . . . ," I.C. § 35-44.1-3-4, and "lawful detention" means *inter alia* "detention in a penal facility[.]" I.C. § 35-31.5-2-186(3). As noted above, "'[p]enal facility' means . . . any . . . facility for confinement of persons under sentence[,]" I.C. § 35-31.5-2-232, and it is precisely the meaning of "confinement" that is to be determined here.

tailors its programs with input from its participants. We will not speculate in Hickman's favor when it is his burden on appeal to show reversible error below.

[15] Second, Hickman raises the fact that his freedom of movement was restricted by a curfew and by a requirement that he "be at Grace House unless he had signed out for work or group meetings or to see his probation officer[.]" Appellant's Br. at 12. We note that the latter assertion is not fully supported by the record. Hickman's probation officer and case manager testified that Hickman "was supposed to sign out, um, to go to, uh, daily schedule, um, at the Grace House, to go to work or groups or come see me[.]" Tr. p. 19. Testimony that Hickman was "supposed to sign out" if he wished to leave for certain listed purposes is not testimony that Hickman was prohibited from leaving for any purposes but those listed. *Id.*

[16] As to the curfew itself, we do not deny that a curfew may be a substantial imposition on a person's liberty. However, Hickman's does not appear to have been such. There is no record of enforcement of the curfew against Hickman, save for the curfew violations appearing much later as one of several predicates for the State's petitions to revoke. Moreover, the curfew could be modified for cause: Hickman's probation officer and case manager testified that, if reentry-court participants "have to work second shift, third shift—we have no problem with that. It's just to keep leisure time [supervised or restricted]." Tr. p. 23.

[17] In any event, whatever restrictions were placed on Hickman's liberty in name were apparently not very zealously enforced in fact. Hickman's probation

officer and case manager testified that, for some period, Hickman "was just out, um, doing whatever he wanted to do." Tr. p. 19. Hickman was able simply to disappear from reentry-court supervision for two months and *even then*, after the State filed its first unsuccessful petition to revoke his participation, continued to enjoy participation in the program. This is not the life of a prisoner or even a home detainee.

[18] Finally, Hickman has not made any showing as to the degree of supervision over him by state actors or as to the degree of autonomy and privacy he enjoyed in conducting his life at Grace House. As noted above, the degree of supervision by Grace House and corrections or court staff appears to have been quite loose, and Hickman has not presented evidence that Grace House should be considered a state actor in this context. Other than the movement restrictions discussed above, Hickman has not presented any evidence at all of restrictions on his autonomy and privacy at Grace House. To the extent that Hickman was able to patronize bars, smoke marijuana, freely lie about his employment, and disappear for two months while participating in reentry court, participation appears to have left him quite at liberty.

## Conclusion

[19] Hickman has not persuaded us that the trial court's conclusion that he was not confined or imprisoned while living at Grace House and participating in reentry court was clearly against the facts and circumstances before it. The court therefore did not err in denying Hickman accrued time against his sentence, and its judgment is affirmed.

Affirmed.

Kirsch, J., and Altice, J., concur.