



FILED

Jan 28 2026, 8:57 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

# I N T H E

# Court of Appeals of Indiana

### Michael L. Williams,

*Appellant-Defendant*

v.

### State of Indiana

*Appellee-Plaintiff*

---

January 28, 2026

Court of Appeals Case No.
25A-CR-687

Appeal from the Boone Circuit Court

The Honorable Lori N. Schein, Judge

Trial Court Cause No.
06C01-2201-F4-40

---

**Opinion by Chief Judge Tavitas**
Judges Bailey and Kenworthy concur.

**Tavitas, Chief Judge.**

## Case Summary

[1] Following a jury trial, Michael Williams was convicted of child molesting, a Level 4 felony, and sexual misconduct with a minor, a Level 5 felony. The trial court sentenced Williams to an aggregate term of eleven years in the Indiana Department of Correction ("DOC"). Williams appeals and argues that the trial court erred by denying him credit time for the period he was on pretrial GPS monitoring. We disagree and, accordingly, affirm.

## Issue

[2] Williams presents one issue, which we restate as whether the trial court erred by denying Williams' request for credit for the period he was on GPS monitoring during his pretrial release.

## Facts

[3] On January 12, 2022, the State charged Williams with two felony counts: Count I, child molesting, a Level 4 felony, and Count II, sexual misconduct with a minor, a Level 5 felony.[1] On February 1, 2022, Williams posted bond; he was required to remain on GPS monitoring and comply with specified conditions of release during the pendency of the case. The trial court's order

---

[1] The conduct underlying Count I occurred in the summer of 2018, and the conduct underlying Count II occurred in the summer of 2016.

further stated, "This is not an order for Home Detention, just monitoring." Appellant's App. Vol. II p. 38. Williams remained on GPS monitoring for three years, from February 1, 2022, until his sentencing on February 19, 2025.

[4] In June 2024, a two-day jury trial was held, and Williams was convicted of both counts. The trial court ordered Williams to "remain out on bond with the GPS" monitoring until the sentencing hearing. Tr. Vol. III p. 228. On February 18, 2025, the trial court held a sentencing hearing, and Williams' counsel requested credit for the time he was on pretrial GPS monitoring. Williams argued that, although Williams could not receive "official credit" for pretrial GPS monitoring, the trial court should give "at least some due weight for serving three plus years of GPS." Tr. Vol. IV p. 5.

[5] The trial court denied credit time for the 1,114 days Williams was on pretrial GPS monitoring and sentenced him to seven years on Count I and four years on Count II.[2] The trial court ordered the sentences to run consecutively for an aggregate sentence of eleven years, all executed in the DOC. Williams now appeals.

## Discussion and Decision

[6] Williams challenges the trial court's determination of his credit time. Williams argues that he is entitled to credit for his pretrial GPS monitoring because it

---

[2] The trial court credited Williams with one day for the time he was incarcerated.

constitutes a form of "confinement" under the credit time statutes.[3] Appellant's Br. p. 6.

## Standard of Review

[7] "When calculating the pre-trial credit to which a defendant is entitled, that number is dependent upon (1) pre-trial confinement; and (2) the pretrial confinement resulting from the criminal charge for which the sentence is being imposed." *Keene v. State*, 202 N.E.3d 481, 483 (Ind. Ct. App. 2023) (citing *Bischoff v. State*, 704 N.E.2d 129 (Ind. Ct. App. 1998), *trans. denied*). "Trial courts have no discretion in awarding or denying that credit." *Id.* (citing *Glover v. State*, 177 N.E.3d 884, 886 (Ind. Ct. App. 2021), *trans. denied*).

[8] In calculating credit time a defendant is entitled to receive, two types of credit must be considered: "'(1) the credit toward the sentence a prisoner receives for time actually served, and (2) the additional credit a prisoner receives for good behavior and educational attainment.'" *Maciaszek v. State*, 75 N.E.3d 1089, 1092 (Ind. Ct. App. 2017) (quoting *Purcell v. State*, 721 N.E.2d 220, 222 (Ind. 1999)), *trans. denied*. These two types of credit are referred to as "accrued time" and "good time credit," respectively.

---

[3] Williams does not specify the number of credit days or the type of credit to which he was entitled; instead, he argues that he should be entitled to "an award of credit time" without further explanation. Appellant's Br. p. 7.

[9] This case involves interpretation of a prior version of our credit time statutes.[4] "Matters of statutory interpretation present pure questions of law; as such, these questions are reviewed *de novo*." *Rodriguez v. State*, 129 N.E.3d 789, 793 (Ind. 2019). "[W]e begin with the statutory language itself, reading words in their plain and ordinary meaning." *Harness v. State*, 246 N.E.3d 1271, 1273 (Ind. Ct. App. 2024) (citing *Spells v. State*, 225 N.E.3d 767, 772 (Ind. 2024)). "We presume the General Assembly 'intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.'" *Spells*, 225 N.E.3d at 772 (quoting *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023)). Our efforts are directed at giving effect to the "legislature's intent" and avoiding a "selective reading of individual words" that could lead to "irrational or disharmonious results." *Id.*

[10] Indiana Code Section 35-50-6-0.5 (2016) provided,

> (1) "Accrued time" means the amount of time that a person is **imprisoned or confined**. [5]

---

[4] The crimes for which Williams was convicted occurred in the summer of 2016 and 2018. Accordingly, the version of Indiana Code Section 35-50-6-3.1 in effect from July 1, 2016, through June 30, 2020, governs. *See, e.g.*, *Harris v. State*, 897 N.E.2d 927, 928-29 (Ind. 2008) ("The sentencing statute in effect at the time a crime is committed governs the sentence for that crime."). Although the victim of Count II could not recall the precise date of the offense, the version of Indiana Code Section 35-50-6-3.1 in effect from July 1, 2015, through June 30, 2016, contains identical language. We therefore analyze the issue under the version in effect from July 1, 2016, through June 30, 2020.

[5] Current Indiana Code Section 35-50-6-0.5 further specifies that the definition of "'accrued time' means the amount of time that a person is imprisoned, confined, on home detention as a condition of probation, or on home detention in a community corrections program. In determining the number of days a person has been imprisoned, confined, on home detention as a condition of probation, or on home detention in a community corrections program, a partial calendar day is considered to be one (1) calendar day."

(2) "Credit time" means the sum of a person's **accrued time, good time credit, and educational credit**.

(3) "Educational credit" means a reduction in a person's term of imprisonment or confinement awarded for participation in an educational, vocational, rehabilitative, or other program.

(4) "Good time credit" means a reduction in a person's term of imprisonment or confinement awarded for the person's **good behavior while imprisoned or confined**.

(emphasis added).

[11] Indiana Code Section 35-50-6-3.1(b)-(d) (2016)[6] in relevant part provided, "A person earns . . . good time credit for . . . days the person is imprisoned for a crime or confined awaiting trial or sentencing," and subsection (f) provided "A person . . . earns . . . good time credit for . . . days the person serves on pretrial home detention awaiting trial."

**Pretrial GPS monitoring does not fall within the statutory meaning of "confinement" under Indiana Code Chapter 35-50-6.**

[12] Although the relevant statute provides for credit time for pretrial home detention, here, the trial court made clear in its original bond and conditional pretrial release order that Williams was placed on GPS monitoring and that this

---

[6] Williams cites only the good-time credit statute in his brief to support his claim of entitlement to credit time. At its core, however, Williams' argument is that pretrial GPS monitoring constitutes a form of confinement. Accordingly, we address both accrued time and good-time credit.

was "not an order for Home Detention." [7]  App. Vol. II pp. 23-24.  Williams does not dispute that conclusion on appeal.  The statutes do not specifically provide for credit time for pretrial GPS monitoring.  Instead, Williams argues that pretrial GPS monitoring constitutes a form of confinement and that he was, therefore, "entitled to credit time."  Appellant Br. p. 6.  The issue before us is, thus, whether GPS monitoring falls within the meaning of "confinement" under Indiana Code Chapter 35-50-6 (2016) such that Williams is entitled to accrued time and good-time credit for his pretrial GPS monitoring.

[13]  Williams cites *Hickman v. State*, 81 N.E.3d 1083 (Ind. Ct. App. 2017), in support of his argument. [8]  In that case, Hickman violated the terms of his probation, and the trial court revoked his probation and ordered him to execute the

---

[7] Whether home detention should be credited toward a sentence has generated debate in both the General Assembly and in our courts.  Before 2001, time served on home detention as a condition of probation did not earn credit toward a sentence.  *See Franklin v. State*, 685 N.E.2d 1062 (Ind. 1997), *overruled by Purcell v. State*, 721 N.E.2d 220 (Ind. 1999).  In *Purcell*, our Supreme Court interpreted the legislature's use of the word "remainder" to reflect an intent to credit an offender with time served before revocation, rather than require service of the entire original sentence.  *Id.* at 223.

This Court later explained, however, that *Purcell* did not address whether pretrial home detention should be credited toward a sentence and held that it should not.  *Senn v. State*, 766 N.E.2d 1190, 1200 (Ind. Ct. App. 2002) ("Absent legislative direction, we believe that a defendant is only entitled to credit toward sentence for pretrial time served in a prison, jail[,] or other facility [that] imposes substantially similar restrictions upon personal liberty." (quoting *Molden v. State*, 750 N.E.2d 448, 450 (Ind. Ct. App. 2001))).

In 2014, the legislature expressly amended the statute to provide that time served on home detention as a condition of probation earns credit toward a sentence, effective July 1, 2014.  And in 2015, the legislature further provided that "[a] person . . . earns . . . good time credit for . . . days the person serves on pretrial home detention awaiting trial."  Ind. Code § 35-50-6-3.1 (2016).

Here, Williams does not dispute that he was not on pretrial home detention.  Rather, he raises a different issue and argues that GPS monitoring constitutes a form of confinement that should entitle him to credit toward his eventual sentence.

[8] Although *Hickman* arose in the context of probation revocation and credit time for a community-based placement, we find its discussion of whether the defendant was "confined" in a halfway house relevant to our interpretation of the credit-time statute.  81 N.E.3d 1083.

remaining four years of his suspended sentence. In that probation-violation context, this Court undertook a detailed statutory-interpretation analysis of the term "confinement," which the statute did not define, and identified several factors relevant to determining "whether a person is confined or imprisoned in a placement and thus earns accrued time." *Id.* Those factors include:

> [W]hether the placement was requested by the person as a condition of probation or was otherwise voluntary; the degree of freedom of movement enjoyed by the person; the degree of direct supervision over the placement exercised by the Department of Correction, a court, or another state actor; and the degree of autonomy and privacy enjoyed by the person in the conduct of his everyday life.

*Id.* at 1086 (citations omitted). Our Court concluded that, although home detention would "entitle" a detainee to accrued time, Hickman was neither on home detention nor "confined or imprisoned." *Id.* Placement in a halfway house, as a nonpenal facility, did not fall within the meaning of being "confined or imprisoned" under the statute because Hickman's freedom was not significantly restricted and most rules were not strictly enforced at the facility. During his placement, Hickman was able to work, entertain guests, maintain privacy, and even leave the facility for extended periods. *Id.*

[14] Similarly, here, we conclude that Williams' pretrial GPS monitoring did not constitute confinement because it was even less restrictive than the halfway house placement in *Hickman*. Although Williams did not voluntarily request GPS monitoring, he nevertheless retained a substantial degree of freedom of

movement. Williams was able to work, as reflected in the record and in his counsel's argument that he was "the sole financial provider" for his family. Tr. Vol. III p. 250. Williams was monitored but was not restricted as to the places he could go.[9]

[15] Williams argues that other limitations were imposed on his freedom, but those limitations were standard conditions imposed on defendants during pretrial release, such as refraining from committing new crimes and from using controlled substances without a valid prescription.[10] Next, Williams points to no part of the record—and we find none—showing that he was under direct supervision by Boone County Community Corrections after the GPS device was installed. Williams did not have daily, weekly, or monthly reporting requirements. *See* App. Vol. II p. 39; *see also Hickman*, 81 N.E.3d at 1086 (concluding that a curfew was not a substantial imposition on the defendant's liberty where it was "not very zealously enforced in fact"). As for privacy and autonomy, Williams does not argue, and the record does not show, that his privacy or autonomy was invaded by the GPS monitoring. A GPS device tracks only a person's location and not the content of the person's conduct.

---

[9] Williams' appellant's brief refers to "exclusionary areas where he could not travel." Appellant's Br. p. 7. Other than the no-contact order between Williams and one of the victims, however, it is unclear from the record what exclusionary areas, if any, applied to him. Williams cites no record support for this claim.

[10] Williams argues that he was not allowed to move his residence without notifying the court, travel outside Indiana, use alcohol or any controlled substance without a valid prescription, and that he was required to sign a Fourth Amendment waiver for purposes of drug testing. Because these are standard conditions imposed on pretrial release, they bear no relation to the issue of confinement. *See* App. Vol. II p. 39.

[16] The only meaningful geographic restriction imposed on Williams stemmed from the no-contact order between him and one of the victims in this case. Williams was ordered not to be present at a location where he "knew [the victim] to be located" while released on bond. Appellant's App. Vol. II p. 36. That restriction was not imposed by GPS monitoring but was a precautionary measure resulting from Williams' offenses and designed to protect the victim given the nature of the case. GPS monitoring itself did not exclude Williams from any areas; the restriction flowed from his conduct toward the victim.[11]

[17] GPS monitoring was a special condition of Williams' pretrial release to which he agreed. Williams did not agree to that condition merely to save "the State a great deal of money" or to confer "a considerable benefit to the taxpayers," as he claims. Appellant's Br. p. 7. Rather, Williams sought release so that he could provide for his family and enjoy the freedom of being "out of custody," as his counsel argued at trial. Tr. Vol. III p. 250. Having accepted those conditions to obtain his release, Williams cannot now recharacterize them as "confinement" entitling him to credit toward his sentence. We, therefore, find his argument unpersuasive. Accordingly, we conclude that Williams is not entitled to accrued time under the statute.

[18] Next, regarding good time credit, Williams is not entitled to good time credit because it is awarded for "the person's good behavior while imprisoned or

---

[11] Williams also argues that he was required to pay $100 per week for GPS monitoring and to charge the device daily, which is irrelevant to the issue of confinement.

confined." Ind. Code § 35-50-6-0.5. Since Williams was not confined under GPS monitoring and did not accrue any time toward the sentence, he was not entitled to good time credit. *See Maciaszek v. State*, 75 N.E.3d 1089, 1093 n.5 (Ind. Ct. App. 2017) ("As Maciaszek is not entitled to credit for actual time served against his Indiana Sentence, he is also not entitled to good time credit, which allows for extra days of credit based on the credit class of the offender and the actual days the offender served. *See* Ind. Code § 35-50-6-3 (good credit time statute).").

[19] In summary, the trial court did not err when it denied Williams' request for credit for the time he spent on pretrial GPS monitoring.

## Conclusion

[20] Because the trial court did not err by denying Williams' request for credit for the time he spent on pretrial GPS monitoring, we affirm.

[21] Affirmed.

Bailey, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Allan W. Reid
Foley Panszi Law, LLC
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana